IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DANA FULLER, | § | |
| | § | No. 460, 2013 |
| Defendant-Below, | § | |
| Appellant, | § | Court Below: Family Court |
| | § | in the State of Delaware in |
| v. | § | and for New Castle County |
| | § | |
| STATE OF DELAWARE, | § | Cr. Nos. 0606013475 and |
| | § | 0405021269 |
| Plaintiff-Below, | § | |
| Appellee. | § | |

Submitted: September 17, 2014
Decided: October 21, 2014

Before **STRINE**, Chief Justice, **HOLLAND**, **RIDGELY**, and **VALIHURA**, Justices; and **DAVIS**, Judge,[*] constituting the Court *en Banc*.

Upon appeal from the Family Court. **REVERSED**.

Dana Fuller, Defendant Below-Appellant, *Pro Se*; Achille C. Scache, Esquire, Doroshow, Pasquale, Krawitz & Bhaya, Wilmington, Delaware and Kara M. Swasey, Esquire (*argued*), Wilmington, Delaware, *Amicus Curiae* by Court Appointment.

Morgan T. Zurn, Esquire, Department of Justice, Wilmington, Delaware, for Appellee.

**STRINE**, Chief Justice, for the majority:

---

[*] Sitting by designation under Del. Const. art. IV, § 12.

Dana Fuller appeals a Family Court decision denying her petition for expungement of her juvenile record because she had committed three traffic violations as an adult. Section 1018 of the Delaware Code allows a court to grant a petition for expungement of a juvenile record "provided the petitioner has no other subsequent adjudication of delinquency or adult conviction."[1] In this case, the Family Court held that Fuller's violations of Title 21, which governs motor vehicles, were "subsequent . . . adult convictions" ("subsequent adult convictions")[2] within the meaning of § 1018. But the Family Court has reached different conclusions in other cases as to whether a traffic violation under Title 21 of the Delaware Code is a subsequent adult conviction that precludes expungement of a juvenile record.[3] Consistent with a prior Family Court decision, Fuller now argues that Title 21 offenses are not "subsequent adult convictions" under § 1018 and the denial of her expungement was therefore erroneous.

After careful consideration, we hold that a "subsequent adult conviction" is a later conviction only for a crime in violation of Title 4, 7, 11, 16, or 23 of the Delaware Code, and does not include a violation of Title 21. This interpretation is most faithful to the plain language of § 1018, which uses the general term "subsequent" – *i.e.*, later – "criminal conviction" in a sentence that earlier refers to crimes set forth in Titles 4, 7, 11,

---

[1] 10 *Del. C.* § 1018.
[2] For the reader's ease, we omit the ellipses for the remainder of the opinion.
[3] *Compare R.E. v. State*, Del. Fam., C.A. No. JN97-2157 (Feb. 22, 2012) (denying expungement under § 1018 for a person who had been convicted of driving under the influence as an adult) *and M.S. v. State*, 2012 WL 6765557 (Del. Fam. Dec. 21, 2012) (denying expungement under § 1017 because petitioner's adult Title 21 traffic violations were "subsequent adult convictions"), *with C.M. v. State*, 2013 WL 6174800 (Del. Fam. May 14, 2013) (granting expungement under § 1017 even though petitioner had an adult speeding violation).

1

16, or 23, but not Title 21. Moreover, § 1015, the provision that sets forth a specific application process for expungement, requires the use of a database that does not include Title 21 offenses, but does include offenses under Titles 4, 7, 11, 16, or 23. Our interpretation also best reflects the express statutory purpose of "protect[ing] children and citizens from unwarranted damage which may occur as a result of a juvenile arrest record, even if the arrest resulted in an adjudication of delinquency."[4] Accordingly, we reverse the Family Court's decision and hold that Title 21 motor vehicle violations do not constitute "subsequent adult convictions" for purposes of expungement of a juvenile record.

## I. FACTUAL AND PROCEDURAL HISTORY

The relevant facts from the record below are undisputed. Fuller was twice adjudicated delinquent in Family Court. The first offense occurred when Fuller was 12 years old, and she pled delinquent in Family Court to one count of criminal mischief on August 13, 2004.[5] For a second offense committed when she was 14 years old, Fuller pled delinquent to one count of theft on April 29, 2008.[6]

Between the ages of 18 and 21, Fuller committed three motor vehicle violations. First, on November 14, 2009, Fuller received a ticket for lacking headlamps on her car in violation of 21 *Del. C.* § 4333.[7] Second, Fuller was found guilty of Careless Driving in

---

[4] 10 *Del. C*. § 1014.
[5] Fam. Ct. Crim. Dkt. In Case ID No. 0405021269.
[6] Fam. Ct. Crim. Dkt. In Case ID No. 0606013475.
[7] App. to Answering Br. at 1.

2012 for an offense committed in 2010.[8]  Finally, Fuller was found guilty of Speeding in Excess of 25 MPH in a Residential District in January 2013.[9]

In a petition dated April 15, 2013, Fuller sought discretionary expungement of her juvenile record under 10 *Del. C.* § 1018.[10]  The State did not oppose her petition.  But the Family Court denied the petition on June 14, 2013 because Fuller had been convicted of three Title 21 traffic violations as an adult.[11]  The Family Court held that these violations were "subsequent adult convictions" within the meaning of § 1018 that precluded expungement.[12]  Fuller appealed, arguing that these traffic violations should not have been considered "subsequent adult convictions" under § 1018.

## II.  THE JUVENILE EXPUNGEMENT STATUTE

The General Assembly has set forth the procedures governing applications for the expungement of a juvenile record in §§ 1014-1019 of the Delaware Code.  We refer to these sections collectively as the "juvenile expungement statute."  A person may seek expungement of her juvenile record under 10 *Del. C.* § 1017 or 10 *Del. C.* § 1018, depending on the nature of the juvenile record.[13]  Both § 1017 and § 1018 allow the Family Court to grant a petition for expungement provided the petitioner has no "subsequent adjudication of delinquency or adult conviction."

---

[8] App. to Answering Br. at 2.
[9] App. to Answering Br. at 21.
[10] Del. Supr. No. 460, 2013, DI 8.
[11] Fam. Ct. Order (Del. Supr. No. 460, 2013, DI 11).
[12] *Id.*
[13] Section 1017 provides for mandatory expungement of misdemeanors or violations of Title 4, 7, 11, 16, or 23, and § 1018 provides for discretionary expungement of these same offenses. Both provisions preclude a grant of expungement if the petitioner has a "subsequent adult conviction."

3

Section 1016 defines "subsequent adjudication of delinquency or adult conviction" as "an adult conviction resulting from the commission of a separate and distinct offense that occurs after a prior adjudication of delinquency" "unless the context otherwise requires." It does not define "offense" or "adult conviction," nor does it refer to any other part of the Delaware Code. Likewise, § 1016(5) defines a "prior adjudication of delinquency" as "an adjudication of delinquency entered by the Court, that occurs prior to the commission of a separate and distinct offense" without defining "offense" or "adjudication of delinquency" or referring to any other part of the Delaware Code.

Section 1015 of the juvenile expungement statute requires the person seeking expungement to file a petition with the Family Court.[14] The petition must include a copy "of that petitioner's criminal history as maintained by the State Bureau of Identification."[15] If the expungement petition meets the requirements of § 1018(a), the Family Court's inquiry shifts to whether the "continued existence and possible dissemination of information relating to the arrest of the petitioner causes, or may cause, circumstances which constitute a manifest injustice to the petitioner."[16] If the Court so finds, it may grant the expungement request. The statute incorporates a rebuttable presumption that "juvenile arrest records cause a manifest injustice for the petitioner."[17] This presumption accords with the Delaware General Assembly's Statement of Policy within the juvenile expungement statute, which reads:

---

[14] 10 *Del. C.* § 1015(b).
[15] *Id.*
[16] 10 *Del. C.* § 1018(c).
[17] *Id.*

> The General Assembly finds that juvenile arrest records are a hindrance to a person's present and future ability to obtain employment, obtain an education, or to obtain credit. This subchapter is intended to protect children and citizens from unwarranted damage which may occur as a result of a juvenile arrest record, even if the arrest resulted in an adjudication of delinquency.[18]

That policy presumption may well have influenced the State's position in the case below. The State did not oppose Fuller's petition before the Family Court. But the Family Court nonetheless denied the request, feeling obligated to do so by its reading of the juvenile expungement statute. In its decision to deny Fuller's petition, the Family Court adopted the reasoning of a prior decision of that court in *M.S. v. State*, which concluded that a motor vehicle offense constitutes a "subsequent adult conviction" precluding expungement under Title 10.[19]

In interpreting the juvenile expungement statute in this way, *M.S. v. State* relied on a dictionary definition of "conviction," which is a "judgment . . . that a person is guilty of a crime."[20] The Family Court then compared that general definition to the general definition of a criminal conviction found in the Delaware Code, which is set forth in 11 *Del. C.* § 233. Because § 233 states that a "crime" or "offense" is an act punishable by a fine or imprisonment, and because Title 21 offenses are punishable by a fine or imprisonment, *M.S. v. State* concluded that Title 21 violations committed after the age of majority are "subsequent adult convictions."[21] The decision also noted that certain

---

[18] 10 *Del. C.* § 1014.

[19] Fam. Ct. Order (Del. Supr. No. 460, 2013, DI 11); *M.S. v. State*, 2012 WL 6765557 (Del. Fam. Dec. 21, 2012).

[20] *Id.* at *2 (citing Black's Law Dictionary (9th ed. 2009)).

[21] *Id.*

violations in Title 21 are explicitly designated as civil, and that the General Assembly's determination that the remainder are criminal under the meaning of § 233 could therefore not be seen as inadvertent.[22]

The Family Court, however, has also reached a different conclusion on this issue. In *C.M. v. State*, the Family Court held that the petitioner's adult speeding violation did not constitute a "subsequent adult conviction" for purposes of § 1017 because a contrary interpretation would lead to an unreasonable result.[23] In so holding, the Family Court compared § 1017 with the statutes that provide for discretionary expungement of an adult record, all of which allow persons to seek expungement despite having convictions for other criminal offenses.[24] Thus, under the *M.S.* court's interpretation of the juvenile expungement statute, a person with a traffic violation could have her adult record expunged in the discretion of the Superior Court, but the same traffic violation would serve as a total bar to the expungement of her juvenile record. The Family Court concluded that this reading of the statute was unreasonable in light of the General Assembly's express intent "to treat juveniles and juvenile arrest records in a relatively lenient manner for expungement purposes. . . ."[25]

---

[22] *Id.*

[23] 2013 WL 6174800 (Del. Fam. May 14, 2013).

[24] *Id.* at *2. The statutes that provide for discretionary expungement of an adult record require the Family Court to consider a subsequent conviction as evidence "that the continued existence and possible dissemination of information relating to the arrest in question does not constitute a manifest injustice to the petitioner." 11 *Del. C.* § 4374 (discretionary expungement in Superior Court); 10 *Del. C.* § 1025 (discretionary expungement in Family Court).

[25] *C.M. v. State*, 2013 WL 6174800, at *2.

6

### III. TITLE 21 VIOLATIONS ARE NOT "SUBSEQUENT ADULT CONVICTIONS" FOR PURPOSES OF THE JUVENILE EXPUNGEMENT STATUTE

On appeal, the State embraces the reasoning of the *M.S.* decision and argues that the denial of Fuller's request was correct. Fuller argues that we should instead adopt the contrary position taken in the *C.M.* case. We, of course, must reach our own *de novo* determination of which interpretation is correct.[26]

As a practical matter, we do not believe that the bare term "subsequent adult conviction" has only one accepted meaning. As the Family Court did in *M.S.*, it is of course possible to go to Black's Law Dictionary and § 233 of Title 11 and come out with a sensible conclusion that a traffic violation is a "criminal conviction" as a general matter of Delaware law. But we are not called upon to determine whether the term "conviction" in § 233 of Title 11 includes violations of Title 21. Instead, we are asked to determine what a "*subsequent* adult conviction" means in the context of the juvenile expungement statute.[27] In that regard, it is relevant that most Americans who have gotten a speeding ticket or some other motor vehicle violation at some point in their adult lives – *i.e.*, *most Americans* – would not consider themselves to have suffered an adult conviction. They would not consider themselves "convicts."[28]

---

[26] *See Arnold v. State*, 49 A.3d 1180, 1183 (Del. 2012).

[27] *See, e.g.*, *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 319 (1988) ("Words, like syllables, acquire meaning not in isolation but within their context.").

[28] In certain other contexts, Delaware courts have drawn a distinction between traffic violations and criminal "offenses." *See Jester v. Dept. Pub. Safety*, 1991 WL 89878 (Del. Super. May 28, 1991) ("Delaware has never treated motor vehicle violations as criminal offenses."); *In re Robert Sacks*, 1970 WL 115795 (Del. Super. Nov. 11, 1970) ("Society does not accept the present definition of crime and criminal record as including minor motor vehicle offenses.").

Our starting point in statutory interpretation is the language of the statute itself.[29] The juvenile expungement statute does not define "subsequent adult conviction" beyond stating that "unless the context otherwise requires," it is an "adult conviction resulting from the commission of a separate and distinct offense. . . ."[30] Notably, "adult conviction" is not a criminal law term of art with a precise meaning. It is in fact a rather loose usage. Moreover, the statute specifically requires a consideration of the context. Thus, to determine what the General Assembly meant when it used the term "subsequent adult conviction" in the juvenile expungement statute, it is critical to examine how it is used in the context in which it was to be given meaning, *i.e.*, within § 1018 itself.[31]

Section 1018(a) provides:

> The Family Court may grant a petition for expungement if: (3) [a] child has no more than 2 adjudications of delinquency involving separate and distinct cases *where the offenses for which the child was adjudicated delinquent are designated as misdemeanors or violations in Title 4, 7, 11, 16 or 23 . . .* excepting violent misdemeanors, provided the petitioner has no prior adjudication of delinquency, and *provided the petitioner has no other subsequent adjudication of delinquency or adult conviction*, and provided that the petitioner has no pending criminal charges, and provided that at least 5 years have passed following the date the second adjudication of delinquency was entered in Family Court.[32]

---

[29] *Friends of H. Fletcher Brown Mansion v. City of Wilmington*, 34 A.3d 1055, 1059 (Del. 2011) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)) ("[T]he meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain . . . the sole function of the courts is to enforce it according to its terms.").

[30] 10 *Del. C*. § 1016.

[31] *See, e.g.*, *United Savings Ass'n v. Timbers of Inwood Forest Associates*, 484 U.S. 365, 371 (1988) ("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme – because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.") (citations omitted).

[32] 10 *Del. C*. § 1018(a)(3) (emphasis added).

Section 1018 thus delineates the types of offenses that count as "adjudications of delinquency" for purposes of the statute; these include misdemeanors or violations of "Title 4, 7, 11, 16 or 23" or equivalent violations of local ordinances. Importantly, Title 21 violations are not included in the list of offenses that constitute "adjudications of delinquency."

Section 1018 then states that the petition may be granted "provided that the petitioner has no *other subsequent* adjudication of delinquency or adult conviction. . . ." "[O]ther subsequent adjudication . . . or adult conviction" should not be read in isolation from the first part of the sentence.[33] The words "other" and "subsequent" indicate that the reader should refer back to the types of offenses identified earlier in the sentence. The statute thus limits the types of "adjudications of delinquency" and "adult convictions" that are relevant for juvenile expungement to those offenses that were previously delineated. Put simply, a "subsequent adult conviction" is best read as referring to a later conviction for a crime in violation of Title 4, 7, 11, 16, or 23. This conclusion is strengthened by the reality that § 1018 also uses the term "prior adjudication of delinquency" and that reference back is also to a category of offenses not including Title 21 violations.

Furthermore, § 1018 does not permit Title 21 offenses to be expunged at all.[34] The legislative choice to carve out Title 21 offenses from § 1018 strongly supports our

---

[33] *See, e.g.*, *Brown v. Gardner*, 513 U.S. 115, 118 (1994) ("Since there is a presumption that a given term is used to mean the same thing throughout a statute, a presumption surely at its most vigorous when a term is repeated within a given sentence. . . .") (citations omitted).
[34] 10 *Del. C.* § 1018(g).

interpretation. Under the maxim of statutory interpretation "expression of the one is exclusion of the other" (in Latin, *expressio unius est exclusio alterius*), we must honor the express legislative decision to omit specific crimes from a comprehensive list.[35] The statute's categorical exclusion of Title 21 offenses thus supports the inference that the relevant meaning of "subsequent adult conviction" was intended to encompass only the crimes set forth in the titles mentioned in § 1018. That inference is bolstered in another important way by the specific procedure the juvenile expungement statute sets up for applications.

Section 1015(b) requires a juvenile petitioner to attach "a copy of that petitioner's criminal history as maintained by the State Bureau of Identification" to her petition for expungement.[36] Section 1015 then directs the Family Court to consider the petition on the basis of the criminal history required to be filed with the petition. Title 21 violations are not listed on these records.[37] For example, Fuller's criminal history as maintained by the State Bureau of Identification only lists her juvenile charges for theft and criminal mischief, both of which are Title 11 offenses, but does not include her adult violations of Title 21.[38]

---

[35] *See Leatherbury v. Greenspun*, 939 A.2d 1284, 1291 (Del. 2007) (quoting NORMAN J. SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION, § 4915 (3d ed.)) ("'[W]here a form of conduct, the manner of its performance and operation, and the persons and things to which it refers are affirmatively or negatively designated, there is an inference that all omissions were intended by the legislature.'").

[36] 10 *Del. C.* § 1015(b).

[37] Title 21 violations are listed in a person's Delaware Criminal Justice Information System record, which is not mentioned in the expungement statute.

[38] *See* Certified Criminal History, attached to Pet. For Expungement.

The General Assembly's decision to require State Bureau of Identification records as part of the juvenile expungement petition makes sense if "subsequent adult convictions" mean only crimes set forth in Titles 4, 7, 11, 16, and 23. Title 21 violations cannot be expunged under § 1018. If these violations were relevant to the Family Court's decision to grant an expungement request, the court would need to consider a criminal record database other than the database selected by the legislature in the juvenile expungement statute. If Title 21 violations were not disqualifying "subsequent adult convictions," however, the Family Court would only need to consider the petitioner's criminal history as maintained by the State Bureau of Identification, the only record database identified in the statute.[39]

In so interpreting the juvenile expungement statute, we recognize that other of its subsections use the terms "subsequent" and "prior" in sentences that have a narrower

---

[39] Section 1017 of the juvenile expungement statute provides for mandatory expungement in some circumstances. As with discretionary expungement under § 1018, mandatory expungement is not available if a petitioner has a "subsequent adult conviction." All parties agree that the process for granting a mandatory expungement is largely ministerial, not adversarial, in the sense that expungement of the petitioner's Title 4, 7, 11, 16, and 23 offenses will be granted so long as the paper record of the petition, including the petitioner's criminal record on the State Bureau of Identification database, which must be attached to the petition, demonstrates that the petitioner is statutorily eligible. To that point, a petition for mandatory expungement, unlike one for discretionary expungement, need not be served on the Attorney General. *Compare* 10 *Del. C.* § 1017(b) *with* 10 *Del. C.* § 1018(b). Because the juvenile expungement statute only requires the petitioner to submit her criminal record as maintained by the State Bureau of Identification, which does not include Title 21 violations, mandatory expungement will likely be granted without the court having the information necessary to determine if a disqualifying Title 21 offense has occurred if Title 21 offenses count as "subsequent adult convictions." We do not believe that we have happened upon a flaw in the mandatory expungement process. Rather, the mandatory expungement process also supports our conclusion that the juvenile expungement petition does not require a report encompassing Title 21 violations because they are not "subsequent adult convictions" for purposes of the juvenile expungement statute.

11

category of offenses than are covered in § 1018.[40] By reading the term "subsequent adult convictions" to cover the broadest possible category of offenses specifically identified in the juvenile expungement statute, which are also those that are listed on the State Bureau of Identification report required to be submitted by the petitioner when seeking expungement, we give the term "subsequent adult conviction" the most expansive definition consistent with the express terms of the juvenile expungement statute. As to this point, it bears emphasis that the juvenile expungement statute only mentions Title 21 offenses in one section, § 1018(g), where it emphasizes that such offenses cannot be expunged under the statute.

Lastly, this interpretation is most consistent with the policy expressly stated within the statute itself: "protect[ing] children and citizens from unwarranted damage which may occur as a result of a juvenile arrest record, even if the arrest resulted in an adjudication of delinquency."[41] Reading "subsequent adult conviction" to only encompass convictions for crimes in violation of Titles 4, 7, 11, 16, and 23 is the interpretation most faithful to this statutory purpose.[42] And as the Family Court found in *C.M. v. State,* this interpretation also avoids an anomaly that would allow a person who committed crimes as an adult to get a discretionary expungement of prior criminal convictions even if she had subsequent Title 21 motor vehicle violations, but deny an

---

[40] 10 *Del. C.* § 1018(a)(1), (a)(4).

[41] 10 *Del. C.* § 1014.

[42] In applying the general principle that statutory language should be interpreted in a manner consistent with legislative purpose, courts will look to the stated purposes of legislation in order to resolve ambiguities. *See, e.g.*, *United States v. Turkette*, 452 U.S. 576, 588-90 (1981) (relying on the RICO statement of findings and purpose in interpreting the term "enterprise").

expungement in identical circumstances to someone who sought to expunge crimes committed while still not of the age when society permits her to vote.

In so holding, we note that we are not suggesting that Title 21 violations are irrelevant to the expungement process. As with other legitimate factors bearing on the decision to expunge, the Family Court may consider Title 21 traffic violations as evidence that the continued existence of the juvenile arrest record does not constitute a manifest injustice to the petitioner,[43] and thus retains the discretion to decide whether a violation of Title 21 is sufficiently serious to bar expungement. But the existence of a Title 21 motor vehicle violation is not a "subsequent adult conviction" that acts as a total bar to a grant of expungement.

*       *       *

Our esteemed colleagues have crafted a thoughtful dissent that asserts that we have strained to interpret the juvenile expungement statute to avoid what the dissent admits is the "harsh" consequence of its own contrary interpretation of the statute. We respectfully disagree.

Going further, the dissent argues that our interpretation renders the juvenile expungement statute absurd. The reason for that is that the dissent believes that there are

---

[43] *See* 10 *Del. C*. § 1018(c) ("If the Court finds that the continued existence and possible dissemination of information relating to the arrest of the petitioner causes . . . circumstances which constitute a manifest injustice to the petitioner, it shall enter an order requiring the expungement of the . . . records. . . . Otherwise, it shall deny the petition."). Because the juvenile expungement statute requires the Attorney General to be given notice of discretionary expungement petitions, the State may, if it chooses, provide the court with a record of violations not required to be included with the petition, such as Title 21 violations, if the State deems it relevant to demonstrating that denial of the expungement application would not constitute a "manifest injustice."

13

some offenses within Titles 4, 7, 11, 16, and 23 that are as unworthy as speeding tickets of acting as a total bar to expungement, such as the boat ramp violation under 23 *Del. C.* § 2125(b) the dissent unearthed in the Code. But reading the juvenile statute to bar expungement for youth offenders who as adults get a speeding ticket or another similar violation in Title 21 – something that eventually happens to most adult drivers – does not diminish the absurd result that the dissent conjures up, involving the undoubtedly much rarer boat ramp violation. Rather, accepting the dissent's interpretation would expand the impact of that result on youth offenders.

At the same time, the dissent voices a concern about our interpretation that comes from a different direction. The dissent argues that our interpretation would permit a discretionary expungement if a petitioner had committed an offense outside of Titles 4, 7, 11, 16, or 23 that the dissent believes to be as serious as those covered by those Titles. But, there is nothing absurd about excluding non-Title 4, 7, 11, 16, and 23 offenses from categorically barring a juvenile expungement. That is the reading most consistent with § 1014, which expressly describes the legislative purpose behind the juvenile expungement statute. Such offenses can still act as a barrier to expungement based on a case-specific judgment by the Family Court.

Therefore, rather than "straining," our interpretation: (i) is rooted in the text of the juvenile expungement statute itself, which never hints that Title 21 violations have any relevance to the statute and which uses an application process requiring a report that

omits such violations;[44] (ii) considers the context in which that text is used, which is what the statute requires us to consider; and (iii) is most faithful to the statute's own stated purpose. By contrast, the dissent itself strains to read the juvenile expungement statute to generate the harsh result about which it complains.

Traditionally, we show respect to the General Assembly and the difficult job it has to do in crafting a complex code of law by endeavoring to interpret its legislation in a reasonable manner that best advances its evident purposes.[45] Courts have long sought to avoid interpretations that produce inequitable results when there is another reasonable reading of the statute.[46] We adhere to that traditional approach.

---

[44] The dissent, after suggesting that we give too little weight to the text of the statute, attempts to minimize the legislature's use of precise language directing the petitioner to attach her criminal record as maintained by the State Bureau of Identification database. After explaining that the Family Court must rely on the DELJIS system to determine whether any charges are pending (which is contradicted by the dissent's admission that the petitioner is required to disclose pending charges as part of her petition), the dissent then cites § 1015(c), which states that the court must consider the "entire *juvenile* arrest record in granting or denying the petition. . . ." This language does not tell us what the Family Court is required to look at when determining whether the petitioner has a "subsequent *adult* conviction." The statute's requirement that the petition be accompanied by the State Bureau of Identification criminal history, would, in our view, tend to hint toward that history as the answer.

[45] *See State v. Fletcher*, 974 A.2d 188, 196-97 (Del. 2009) ("The role of this Court when construing a statute is to give effect to the policy intended by the General Assembly."); *State v. Cooper*, 575 A.2d 1074, 1076 (Del. 1990) ("Literal or perceived interpretations, which yield illogical or absurd results, should be avoided in favor of interpretations consistent with the intent of the Legislature."); *Giuricich v. Emtrol Corp.*, 449 A.2d 232, 238 (Del. 1982) ("It is fundamental that the Courts ascertain and give effect to the intent of the General Assembly as clearly expressed in the language of a statute."). *See also Cabell v. Markham*, 148 F.2d 737 (2d Cir. 1945) (Hand, J.) ("But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning.").

[46] *See e.g.*, *Spielberg v. State*, 558 A.2d 291, 293 (Del. 1989) ("The statute must viewed as a whole, and literal or perceived interpretations which yield mischievous or absurd results are to be avoided."); *E.I. Du Pont De Nemours & Co. v. Clark*, 88 A.2d 436, 438 (Del. 1952) ("The court must necessarily be guided by the presumption that the legislature did not intend an

15

Although we conclude that Title 21 offenses do not constitute "subsequent adult convictions" for purposes of the juvenile expungement statute, the good faith disagreement between ourselves and our respected colleagues in dissent highlights the reasons why our trial judge colleagues have struggled to reach agreement on the question before us. It may be that there is more work for our General Assembly to do to make the law clearer,[47] or to make the opportunity to receive an expungement more expansive or restrictive.[48] But giving the law as it is written the most reasonable reading consistent with its express purpose is the duty we owe to the General Assembly as the Branch of government charged with the difficult task of crafting our statutory laws in real time, with limited resources.

## IV. CONCLUSION

For these reasons, we reverse the Family Court's decision and hold that Title 21 traffic violations do not constitute "subsequent adult convictions" for purposes of the

---

unreasonable, absurd, or unworkable result. . . . In determining the meaning of ambiguous statutory language, an appreciation of the results which may follow from one possible construction or another may, on occasion, be conclusive as to the correct construction to be placed upon the language, since an irrational, impractical or excessive result presumably could not have been intended by the Legislature.").

[47] *See e.g.*, *In re Arminger*, 2005 WL 6409021, at *1 (acknowledging differences in opinion among decisions of the Superior Court in addressing whether Title 21 offenses can be expunged under the adult expungement statute and expressing a hope for those differences in opinion to be resolved by an appeal to the Supreme Court).

[48] As to this point, the General Assembly has recently demonstrated its ability to more sensitively apply the criminal laws by amending 7 *Del. C.* § 1304(i) to provide that "[a]ny conviction of a Class C or Class D Environmental Violation, for a first offense, shall not be reported on criminal history records kept by DELJIS or the State of Delaware." *See* 79 Del. Laws ch. 421 § 1304(i) (2014).

juvenile expungement statute. Because there was no other basis for denying Fuller's request, her expungement motion should be granted on remand. Accordingly, the judgment of the Family Court is REVERSED.

**VALIHURA**, Justice, dissenting, with **DAVIS**, Judge, joining:

While I acknowledge the policy reasons set forth in the majority's decision, the strict canons of statutory construction compel me to respectfully dissent.

"[T]he meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain . . . the sole function of the courts is to enforce it according to its terms."[1] If statutory text is unambiguous, this Court's role is limited to an application of the literal meaning of the statute's words.[2]

The majority correctly begins its interpretation of the term "adult conviction" by looking at the language of the statute itself. The juvenile expungement statute provides in relevant part:

> (a) The Family Court may grant a petition for expungement if: (3) A child has no more than 2 adjudications of delinquency involving separate and distinct cases where the offenses for which the child was adjudicated delinquent are designated as misdemeanors or violations in Title 4, 7, 11, 16 or 23 . . . excepting violent misdemeanors, provided the petitioner has no prior adjudication of delinquency, and *provided the petitioner has no other subsequent adjudication of delinquency or adult conviction*, and provided that the petitioner has no pending criminal charges, and provided that at least 5 years have passed following the date the second adjudication of delinquency was entered in Family Court.[3]

Here, the legislature has provided a definition of "subsequent adjudication of delinquency or adult conviction" under 10 *Del. C.* § 1016(6):

> For purposes of juvenile expungement, unless the context otherwise requires:
>  . . . .

---

[1] *Friends of H. Fletcher Brown Mansion v. City of Wilmington*, 34 A.3d 1055, 1059 (Del. 2011) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)).
[2] *Dennis v. State*, 41 A.3d 391, 393 (Del. 2012).
[3] 10 *Del. C.* § 1018(a)(3) (emphasis added).

1

(6) Subsequent adjudication of delinquency or adult conviction" means an adjudication of delinquency or an adult conviction resulting from the commission of a separate and distinct *offense* that occurs after a prior adjudication of delinquency.[4]

Title 10, however, does not define what constitutes an "offense." The definition for "offense" is found in 11 *Del. C.* § 233 (definition and classification of offenses).[5] Section 233(a) defines "'crime' or 'offense' [as] an act or omission forbidden by a statute of this State and punishable upon conviction by: (1) Imprisonment; or (2) Fine."[6] Section 233(c) of Title 11 explains that "[a]n offense is either a felony, a misdemeanor or a violation."[7]

Title 11 also makes clear that *violations* are a separate category of *offenses* because in order for an offense to be a violation, it must be "expressly declared to be a violation."[8] Specifically, 11 *Del. C.* § 4203 provides: "There shall be a class of offenses denominated violations. No offense is a violation unless expressly declared to be a violation in this Criminal Code or in the statute defining the offense."[9] A plain reading of this statutory text reflects a legislative intent to treat felonies and misdemeanors differently from violations.[10] However, a plain reading of the term "adult conviction"

---

[4] 10 *Del. C.* § 1016(6) (emphasis added).
[5] 11 *Del. C.* § 233(a); *see also Black's Law Dictionary* (9th ed. 2009) (defining "offense" as "a violation of the law, a crime, often a minor one.").
[6] 11 *Del. C.* § 233(a).
[7] *Id.* at § 233(c).
[8] *See* 11 *Del. C.* § 4203.
[9] *Id.*
[10] This distinction was reflected in the case law, also. *See Jester v. Dept. Pub. Safety*, 1991 WL 89878 (Del. Super. May 28, 1991) (Steele, J.) ("Delaware has never treated motor vehicle violations as criminal offenses."); *In re Robert Sacks*, 1970 WL 115795 (Del. Super. Nov. 11, 1970) ("Society does not accept the present definition of crime and criminal record as including minor motor vehicle offenses.").

indicates that it encompasses all "offenses." This reading of the statutory scheme leads to the harsh result that the majority understandably strains to avoid, namely, that speeding violations under Title 21 are bars to juvenile expungement.

I part from the majority's company in this case because, while I agree that the result is harsh and also favor a way to avoid it, I cannot do so through my reading of the statutes as they are presently written. Thus, if there is a perceived "harshness" with this result, then that is a problem for the legislature to address.[11]

The majority concludes that only offenses contained within Titles 4, 7, 11, 16, and 23 act as an automatic bar to juvenile expungement under Section 1018(a)(3). They argue that because the five titles are expressly enumerated, these five titles must be the only the titles that are included within the term "adult conviction." Therefore, they argue, a Title 21 offense, since it is not one of the five enumerated titles, is not a bar to expungement. The flaw in the majority's statutory analysis is evidenced in at least six ways.

First, to accept the majority's logic, and to apply it consistently within Section 1018, would be to find that only Title 11 and 16 adult convictions bar expungement when the petitioner is seeking expungement of a single juvenile felony under 10 *Del. C.*

---

[11] *Cf. Lewis v. City of Chicago, Ill.*, 580 U.S. 205, 215 (2010) ("It is not for us to rewrite the statute so that it covers only what we think is necessary to achieve what we think [the legislature] really intended."); *U.S. v. Locke*, 471 U.S. 84, 95 (1985) ("Nor is the Judiciary licensed to attempt to soften the clear import of [the legislature's] chosen words whenever a court believes those words lead to a harsh result.").

3

§ 1018(a)(1), because that subsection only mentions Titles 11 and 16.[12] The majority is not prepared to say that Section 1018(a)(1) is so limited. Yet, the majority fails to offer any cogent explanation for the lack of consistency in their interpretation of two paragraphs contained in the same section of the statute. The majority's logic conflicts with the principle of statutory construction upon which the majority relies, namely, the "expression of one thing is the exclusion of another."[13]

Second, it is not reasonable to conclude that the five titles referenced in Section 1018(a) are the only offenses which should automatically bar juvenile expungement for yet another reason. Section 1018(a)(3) references Titles 4, 7, 11, 16, and 23.[14] However, there are offenses under Titles 3, 6, 9, 15, 20, 21, 30, and 31 that constitute felonies and could be deemed "adult convictions" that bar juvenile expungement.[15]

---

[12] 10 *Del. C.* § 1018(a)(1) ("The Family Court may grant a petition for expungement if: (1) A child is charged in a case with the commission of an offense designated as a felony in *Title 11 or 16*, and the case is terminated in favor of the child, provided the petitioner has no prior adjudication of delinquency, and provided that the petitioner has no *subsequent adjudication of delinquency or adult conviction*, and provided that the petitioner has no pending criminal charges, and provided that less than 1 year has passed following the date the case was terminated, disposed of, or concluded in Family Court." (emphasis added)).

[13] *Brown v. State*, 36 A.3d 321, 325 (Del. 2012); *see also Leatherbury v. Greenspun*, 939 A.2d 1284, 1290-92 (Del. 2007) (explaining the *expressio unius est exclusio alterius* canon of statutory interpretation).

[14] 10 *Del. C.* § 1018(a)(3).

[15] *See, e.g.*, 3 *Del. C.* § 10050 (fraudulent certificate of registration or eligibility documents); 6 *Del. C.* §§ 4720-4724 (unused property markets); 6 *Del. C.* § 73-201 (fraud); 6 *Del. C.* § 2503A (registration of sellers, telemarketers, and telemarketing businesses); 9 *Del. C.* § 916 (unauthorized acts against a service dog); 15 *Del. C.* § 5301 (bringing armed soldiers into State to interfere with elections); 20 *Del. C.* § 3128 (destruction of property, looting or injury of persons during state of emergency); 21 *Del. C.* § 2316 (altering or forging certificate of title); 21 *Del. C.* § 2760(b) (duplication, reproduction, manufacture, and sale of identification card); 21 *Del. C.* § 4103(b) (obedience to authorized persons directing traffic); 21 *Del. C.* § 4134(d) (operation of vehicles on approach of authorized emergency vehicles); 21 *Del. C.* § 4177(d)(3)-(7) (third or greater offense driving under the influence or with prohibited alcohol or drug

Third, Section 1018(a)(3) itself uses the term "offenses" to include "violations" in providing that "[a] child has no more than 2 adjudications of delinquency involving separate and distinct cases where the offenses for which the child was adjudicated delinquent are designated as misdemeanors or violations . . . ."[16] Thus, the majority's logic of holding that only offenses under Titles 4, 7, 11, 16, and 23 bar expungement, leads to yet another illogical result. For example, Title 23 makes it a violation to fail to purchase a $35 boat ramp certificate.[17] It would be an absurd result if the failure to purchase a boat ramp certificate bars juvenile expungement when careless driving under Title 21[18] that results in an accident[19] does not. Thus, while the majority relies on the policy statement in Section 1014 regarding the desire to "protect children and citizens from unwarranted damage which may occur as a result of a juvenile arrest record . . . ," its interpretation of the statutory scheme does not necessarily further that end.

---

content); 21 *Del. C.* § 4202(b)-(c) (duty of driver involved in collision resulting in death); 21 *Del. C.* § 4604(a) (possession of motor vehicle master keys); 21 *Del. C.* § 6704 (receiving or transferring stolen vehicle); 21 *Del. C.* § 6705(b), (d) (removed, falsified or unauthorized identification number on vehicle with intent to conceal or misrepresent); 21 *Del. C.* § 6708 (possession of blank title); 21 *Del. C.* § 6709 (removal of warranty or certification stickers); 21 *Del. C.* § 6710 (unlawful possession of assigned titles); 30 *Del. C.* § 574 (fraud and false statements); 30 *Del. C.* §§ 5131-5140 (special fuel tax); 31 *Del. C.* § 3913 (adult protective services).

[16] 10 *Del. C.* § 1018(a)(3).

[17] 23 *Del. C.* § 2113(e) ("Any vessel utilizing tidal water boat access facilities provided by the Department shall be registered as required in this section in the State (which license includes funds for maintenance of these facilities under § 2118(b) of this title) or shall purchase a 'boat ramp certificate.'"); 23 *Del. C.* § 2125(b) ("Whoever violates § 2113(e) of this title shall be guilty of a Class D environmental violation.").

[18] 21 *Del. C.* § 4176.

[19] *See, e.g.*, *Shockley v. Whitehead*, 2014 WL 1254113 (Del. Super. Mar. 26, 2014); *Christiansen v. Gustafson*, 2013 WL 6913241 (Del. Super. Dec. 24, 2013).

Fourth, the majority's reliance on Section 1015(b)'s requirement that petitioners attach "a copy of that petitioner's criminal history as maintained by the State Bureau of Identification" in support of its conclusion is misplaced.[20] The majority reasons that because the certified criminal history does not include Title 21 traffic violations, such offenses were not intended to be considered as bars to juvenile expungement. The majority is correct in noting that Title 21 traffic violations are listed on the Delaware Criminal Justice Information System ("DELJIS"), and most Title 21 offenses are not included in the certified criminal history.[21] However, this argument fails to acknowledge that the Family Court, when considering the expungement petition, must always rely on the DELJIS record for certain purposes.[22] Only the DELJIS record – not the certified criminal history – indicates whether an individual has a pending criminal charge against him or her. Thus, the Family Court must rely on the DELJIS record to determine if there are pending criminal charges against the petitioner that may bar juvenile expungement.[23] It seems logical, therefore, that the DELJIS record, which is unavailable to the general

---

[20] 10 *Del. C.* § 1015(b).

[21] Felony convictions under Title 21 are included in the certified criminal history.

[22] *See* 10 *Del. C.* § 1015(c) ("The Family Court must consider the entire juvenile arrest record in granting or denying the petition, consistent with sections §§ 1017 and 1018 of this title."). While it is true that petitioners have an obligation to disclose whether they have any pending delinquency or criminal charges on the petition, Section 1015(c) expressly requires that the Family Court consider petitioners' *record* when determining eligibly of expungement. *See id.*; Petition for Expungement of Juvenile Record Form 282M, 282D, *available at* http://courts.delaware.gov/forms/download.aspx?id=60948.

[23] *See* 10 *Del. C.* § 1018(a)(3) (noting that expungement may be granted if, among other provisions, "the petitioner has no pending criminal charges").

6

public, was intended by the legislature to be used by the Family Court to determine a petitioner's eligibility for juvenile expungement.[24]

Fifth, the majority reaches the conclusion that only violations under the titles enumerated in the language of Section 1018(a)(3) should constitute a bar on expungement, in part, on reading into the terms "other" and "subsequent" a reference to the specified titles mentioned in the subsection. The terms "other" and "subsequent" apply to "adjudication of delinquency" but do not apply to "adult conviction." This is because an "adult conviction" must necessarily be after-in-time any juvenile offense or adjudication of delinquency. Whereas an adjudication of delinquency may not necessarily be after the offense for which expungement is sought, and therefore, the terms "other" and "subsequent" are a necessary modifier. To apply the terms "other" and "subsequent" to "adult conviction" would create redundancy and violate the canon against surplusage[25] because an offense committed as an "adult" necessarily encompasses the fact that it is subsequent to an offense committed as a "juvenile." As a result, the use of the word "or" serves as a disjunction between "other subsequent adjudication of

---

[24] Appellant, through the Amicus Curiae, also argues that if the Family Court is to rely on the DELJIS record, there is no need for a petitioner to pay for the certified criminal history. This is because the DELJIS record contains all the information in the certified criminal history. However, it is possible that the legislature intended for the Family Court to have two forms of a petitioner's criminal history. The DELJIS record is not certified and may contain inaccuracies. *See, e.g.*, *M.S. v. State*, 2012 WL 6765557, *1 (Del. Fam. Dec. 21, 2012) (noting that petitioner's DELJIS record was "incorrect" regarding the disposition of an earlier Underage Consumption charge). The certified criminal history, on the other hand, is authenticated and verified by the State Bureau of Identification.

[25] *See Doroshow, Pasquale, Krawitz & Bhaya v. Nanticoke Mem'l Hosp., Inc.*, 36 A.3d 336, 344 (Del. 2012) ("We affirm the canon of statutory construction that every word chosen by the legislature (and often bargained for by interested constituent groups) must have meaning.").

7

delinquency" and "adult conviction."[26]  Accordingly, even if we were to attribute any meaning to the words "other" and "subsequent," those words modify "adjudication of delinquency," not "adult conviction."

Sixth, the juvenile expungement statutes have been amended several times in the recent years.[27]  The General Assembly has had ample opportunity to include within the statutory text carve outs and exclusions.  For example, it has made explicit exclusions in 11 *Del. C.* § 4121(e)(2) for motor vehicle offenses:

> If the offender has been convicted of any subsequent offense (*other than a motor vehicle offense*) . . . no petition or redesignation [of a reformed sex offender] shall be permitted until 25 years have elapsed from the date of the subsequent conviction . . . ."[28]

Additionally, the General Assembly designated certain Title 21 violations as civil offenses that do not constitute prior convictions for the purpose of granting probation before judgment.[29]  These carve outs indicate that the legislature intends for the term

---

[26] In my view the disjunction would read as:  ". . . provided the petitioner has no other subsequent adjudication of delinquency . . ." and ". . . provided the petitioner has no . . . adult conviction . . . ."  The majority's opinion contorts the reading of the statute.  The majority would have us read the disjunction as:  ". . . provided the petitioner has no other subsequent adjudication of delinquency. . ." and ". . . provided the petitioner has no other subsequent . . . adult conviction . . . ."  Such a reading makes little to no sense in the context of a juvenile expungement.  In the context of juvenile offenses that may be expunged, it seems odd that an individual seeking to expunge a juvenile offense would have an "*other*" adult conviction when it is likely that the individual had no *initial* adult conviction.  Further, the phrase before – "provided the petitioner has no prior adjudication of delinquency" – also supports the view that the statute intends to contrast "prior" and "other subsequent" adjudications of delinquency.  *See* 10 *Del. C.* § 1018(a)(3).

[27] 146 Del. Laws 188 (2011); 146 Del. Laws 252 (2012); 146 Del. Laws 343 (2012).

[28] 11 *Del. C.* § 4121(e)(2) (emphasis added).

[29] *See e.g.*, 21 *Del. C.* § 4178 ("Any violation of this subchapter or any municipal or county ordinance, code or regulation prohibiting stopping, standing or parking shall be subject to a civil penalty only. *Such violation shall not be classified as a criminal offense and shall not qualify as a prior conviction* for purposes of § 4218(c)(1)f. of Title 11." (emphasis added)); 21 *Del. C.*

"offense" to include Title 21 traffic violations unless there is a motor vehicle offense carve out.[30] Thus, because certain statutes expressly carve out motor vehicle violations from qualifying offenses and Title 10 does not, the legislature must have intended to include Title 21 traffic violations within the scope of offenses that bar juvenile expungement.

The Family Court has struggled with how to address Title 21 in the context of juvenile expungement. For example, in *M.S. v. State*, the Family Court addressed a petition for juvenile expungement where the petitioner had seven convictions for speeding and one conviction for failure to change an address.[31] The court interpreted "adult conviction" under its plain meaning and found that Title 21 traffic violations were "adult convictions."[32] In *R.E. v. State*, the Family Court addressed a petition for juvenile expungement where the petitioner had two driving under the influence ("DUI") convictions as an adult.[33] The court considered our decision in *Lee v. State* where we affirmed the denial of a juvenile expungement petition under the predecessor of our current juvenile expungement statutes[34] because Lee's offenses, "including motor vehicle

---

§ 801 ("The provisions of this chapter shall apply to civil penalties created pursuant to §§ 4101(d) and 4802 of this title and to other civil penalties provided for in this title.").

[30] *See Office of Chief Med. Exam'r v. Dover Behavioral Health Sys.*, 976 A.2d 160 (Del. 2009) (indicating that the legislature knows how to create carve outs, and when the legislature does not, it intended not to).

[31] *M.S.*, 2012 WL 6765557.

[32] *Id.*

[33] *R.E. v. State*, Del. Fam., C.A. No. JN97-2157 (Feb. 22, 2012).

[34] 10 *Del. C.* § 1001(a) ("In any case wherein an adjudication has been entered upon the status of a child under 18 years of age and 3 years have elapsed since the date thereof and no subsequent adjudication has been entered against such child, the child or the parent or guardian may present a duly verified petition to the Court setting forth all the facts in the matter and praying for the relief provided for in this section[.]"), *repealed by* 78 Del. Laws 2001, ch. 188, § 1 (2012). The

9

offenses, driving under the influence, failure to register as a sex offender and hindering prosecution," were bars to juvenile expungement.[35] The court balanced our decision against the fact that a certified criminal history from the State Bureau of Identification does not include motor vehicle violations, including first and second offense DUIs.[36] The Family Court ultimately reached the conclusion that a DUI was a Title 21 offense that would bar juvenile expungement because it "is a very serious offense which can cause severe injury and death."[37] However, in *C.M. v. State*, the Family Court determined that a speeding offense should not be considered an "adult conviction" because otherwise the plain meaning of the juvenile expungement statute leads to an unreasonable result.[38] These cases suggest that the Family Court could benefit from some clearer guidance on what types of offenses constitute bars to juvenile expungement.

Apart from our disagreement with the majority's statutory analysis, we further depart from the majority's opinion in its reading of *C.M. v. State*. The majority relies on this case to illustrate a potential anomaly where an expungement would not be barred for a predicate offense committed[39] as an adult, but would be barred for an offense

---

former juvenile expungement statute only includes the term "subsequent adjudication" and does not include the term "adult conviction." *See id.* However, this Court interpreted the term "subsequent adjudication" to include convictions as well. *See Lee v. State*, 2009 WL 2894315 (Del. Sept. 10, 2009).

[35] *Lee*, 2009 WL 2894315, at *1 (interpreting 10 *Del. C.* § 1001(a), *repealed by* 78 Del. Laws 2001, ch. 188, § 1 (2012)).

[36] *R.E.*, Del. Fam., C.A. No. JN97-2157.

[37] *Id.* at *2.

[38] *C.M. v. State*, 2013 WL 6174800 (Del. Fam. May 14, 2013).

[39] It should be noted that the adult expungement statute allows for the offense to be expunged if, among other conditions, the case is terminated in favor of the accused. *See* 10 *Del. C.* § 1025. Thus, if the offense was actually committed by the adult and judgment against the adult was entered, the adult petitioner would not be eligible to have his or her criminal record expunged.

committed as juvenile, if a Title 21 offense were committed after the offense for which expungement is sought. The majority fails to consider critical language in the adult expungement statute. The Family Court concludes that if "adult convictions" under Section 1018 include Title 21 offenses, the juvenile expungement statutes would be harsher than the adult expungement statute.[40] The Family Court reached this conclusion based on its reading of the adult expungement statute, 10 *Del. C.* § 1025:

> If the Court finds that the continued existence and possible dissemination of information relating to the arrest of the petitioner causes, or may cause, circumstances which constitute a manifest injustice to the petitioner, it shall enter an order requiring the expungement of the police and court records relating to the charge or case. Otherwise, it shall deny the petition. The burden shall be on the petitioner to allege specific facts in support of that petitioner's allegation of manifest injustice by a preponderance of the evidence. *The fact that the petitioner has **previously** been convicted of a criminal offense, other than that referred to in the petition, shall be considered by the Court as prima facie evidence that the continued existence and possible dissemination of information relating to the arrest in question does not constitute a manifest injustice to the petitioner.*[41]

Section 1025 indicates that an adult convicted of a criminal offense *prior* to the case terminated in his or her favor (for which he or she is seeking expungement) must rebut the *prima facie* evidence that a denial of an expungement petition will not constitute a manifest injustice.[42] The Family Court concluded that if Section 1025 allows for presenting evidence to the court to determine whether a denial of an expungement petition would constitute a manifest injustice, and Section 1018 does not provide that opportunity, the juvenile expungement statute is more harsh than the adult expungement

---

[40] *C.M.*, 2013 WL 6174800, at *2-3.
[41] *Id.* at *2 (emphasis added) (quoting 10 *Del. C.* § 1025(e)(2)).
[42] 10 *Del. C.* § 1025(e)(2).

11

statute.[43]  This conclusion, which the majority adopts, is based upon a misunderstanding of the time periods referenced in the statutes.  The adult expungement statute only allows for evidence to be presented if the offense occurred *prior* to the case for which the petition is filed – not *after*.[44]  The "adult conviction" term in the juvenile expungement statutes applies only to an offense "*subsequent*" to the case for which the petition is filed.[45]  Thus, because the adult expungement statute and the juvenile expungement statutes reference different time periods, it does not follow that the juvenile expungement statutes are more onerous than the adult expungement statutes.[46]

Finally, as pointed out to this Court during oral argument, the State Senate considered a bill as recently as June 3, 2014, that would have amended the definition of "adult conviction" to include only offenses "punishable by 30 or more days of imprisonment."[47]  It appears that some members of the General Assembly have already recognized that allowing Title 21 traffic violations to bar juvenile expungement can result in what is likely viewed by many as an undesirable result.  As the statute is now written, however, I cannot embrace my colleagues' interpretation of it.  Accordingly, I would AFFIRM the decision below.

---

[43] *C.M.*, 2013 WL 6174800, at *2-3.

[44] The logic seems to be that a petitioner with a record of criminal conduct prior to the case for which he or she seeks expungement has a higher standard for manifest injustice than a petitioner with no record of prior criminal conduct.

[45] 11 *Del C.* § 1018 (a)(3) (emphasis added); *see also id.* at § 1017(a)(3).

[46] In fact, a different provision of the adult expungement statute only allows expungement "if the person has not been convicted for any crime since the date [of] the case [for which petitioner seeks expungement]."  10 *Del. C.* § 1025(d).

[47] S.B. 233, 147th Gen. Assemb., 2d Reg. Sess. (Del. 2013).