**Gary B. RUBICK, Claimant Below, Appellant,**

v.

**SECURITY INSTRUMENT CORP., Employer Below, Appellee.**

No. 44, 2000.

Supreme Court of Delaware.

Submitted: Sept. 12, 2000.
Decided: Nov. 29, 2000.

---

Joseph J. Rhoades, Esquire, and W. Christopher Componovo, Esquire (argued), of Law Offices of Joseph J. Rhoades, Wilmington, for Appellant.

Danielle K. Yearick, Esquire, of Tybout, Redfearn & Pell, Wilmington, for Appellee.

Before VEASEY, Chief Justice, WALSH and BERGER, Justices.

BERGER, Justice:

■ This appeal is about the calculation of wages under the Workers' Compensation Act. The sole issue is whether an injured worker must be compensated at the hourly rate he was receiving at the time of the accident, or whether the compensation may be based on the average hourly rate the worker was receiving for the six months before the accident. In this case, because the employee's hourly rate at the time of the accident was more than double his average hourly rate, the Superior Court held that the average hourly rate applies. We conclude, based on the language and history of the statute, that an hourly employee must be compensated on the basis of his/her hourly rate at the time of the accident even if that rate is significantly above or below the employee's average hourly rate. Accordingly, we reverse.

## I. Factual and Procedural Background

On August 17, 1998, Gary Rubick suffered pain in his back while working for Security Instrument Corp. on renovations to Legislative Hall in Dover, Delaware. At the time of the accident, Rubick was being paid the "State Rate"—$26.72 per hour. He was not regularly paid at that rate, however. Security Instrument contracted with many different businesses, and Rubick's rate of pay fluctuated with each contract. During the six months preceding the accident, Rubick's average

hourly rate was $12.60 per hour. Security Instrument offered Rubick a Compensation Agreement calculated on the $12.60 hourly rate, but Rubick maintained that he was entitled to his actual hourly rate of $26.72. The Industrial Accident Board agreed with Security Instrument, and the Superior Court affirmed the decision of the Board.

## II. Discussion

The Workers' Compensation Act specifies the compensation that employees are entitled to receive for work-related injuries. The amount of compensation is a percentage of the employee's wages, and § 2303 of the Act provides the methods of calculating weekly wages:

(b) If the rate of wages is fixed by the day or hour, the employee's weekly wages shall be taken to be that rate times the number of days or hours in an average work week of the employee's employer at the time of the injury. If the rate of wages is fixed by the output of the employee, then the employee's weekly wage shall be taken to be the employee's average weekly earnings for so much of the preceding 6 months as the employee has worked for the same employer. If, because of exceptional causes, such method of computation does not ascertain fairly the earnings of an employee, then the weekly wage shall be based on the average earnings for 6 months of an average employee of the same or most similar employment.[1]

■ The first two sentences of the statute are readily understandable. Weekly wages, for an employee who is paid by the hour or day, are determined by multiplying the hourly or daily rate by the number of hours or days in the employer's average work week. For an employee who is paid based on output, weekly wages are determined by averaging the employee's actual earnings during the time that the employee worked for the same employer, not to

---

1. 19 *Del.C.* § 2302.

exceed six months. The third sentence is the one that prompted this appeal. It specifies a different calculation to be applied when "exceptional causes" would make it unfair to use the weekly wages determined by "such method of computation." The question we must decide is whether this last calculation may be applied, in exceptional circumstances, to determine the weekly wages for all employees or only for employees who are paid based on output.

■■■ The rules of statutory construction are well settled. The goal, in all cases, is "to ascertain and give effect to the intent of the legislature."[2] If the statute is unambiguous, there is no room for interpretation, and the plain meaning of the words controls.[3] If the statute is ambiguous, several principles guide the Court's interpretation. First, the statute must be read as a whole in a manner that will promote its purposes.[4] Second, courts should consider the statute's history[5] and "examine the text of the [statute] and draw inferences concerning the meaning from its composition and structure."[6] The final rule, for purposes of this analysis, is that "[r]eferential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent."[7]

We start our analysis by deciding whether the statute is ambiguous. We find that it is because the phrase, "such method of computation," in the last sentence is reasonably susceptible of two interpretations.[8] It could refer to the method of computation used for output employees or it could refer to any method of computation that "does not ascertain

fairly the earnings of [the] employee...". The history of the statute provides some insight as to which interpretation is correct.

The original version of this statute, adopted in 1917, distinguished between employees whose work was interrupted and those who worked continuously:

> In occupations involving seasonal employment or employment dependent upon the weather, the employee's weekly wages shall be taken to be one-fiftieth of the total wages which he has earned from all occupations during the year immediately preceding the accident, unless it be shown that during such year, by reason of exceptional causes, such method of·computation does not ascertain fairly the earnings of the employee; in which case the period for calculation shall be extended so far as to give a basis for the fair ascertainment of his average weekly earnings. In continuous employments, if immediately prior to the accident, the rate of wages was fixed by the day or hour, or by the output of the employee, his weekly wages shall be taken to be five and one-half times his average earnings at such a rate for a working day of ordinary length... and using as a basis of calculation, his earnings during so much of the preceding six months as he worked for the same employer.[9]

The "exceptional causes" alternative calculation was available only for "occupations involving seasonal employment or employments dependent upon the weather...." Employees who were paid by the day or

2. *Ingram v. Thorpe,* Del.Supr., 747 A.2d 545, 547 (2000).

3. *Ibid.*

4. *Spielberg v. State,* Del.Supr., 558 A.2d 291 (1989); *Eliason v. Englehart,* Del.Supr., 733 A.2d 944 (1999).

5. *State v. Cambria,* 137 Conn. 604, 80 A.2d 516, 518 (1951).

6. *Klotz v. Warner Communications, Inc.,* Del. Supr., 674 A.2d 878, 879 (1995) (quoting Norman J. Singer, 2 A *Sutherland Statutory Construction* § 47.01 (5th Ed.1992)).

7. Norman J. Singer, 2A *Statutes and Statutory Construction* § 47.33 (6th Ed.2000).

8. *Snyder v. Andrews,* Del.Supr., 708 A.2d 237, 241 (1998).

9. 29 *Del.Laws* c. 233, 3193 uu, Section 140.

the hour and output employees were grouped together as "continuous" employees. Their wages were calculated by the same specified method, and no alternative calculations were authorized. The statute remained basically unchanged until 1955, when the current version of § 2302 was enacted.

■ The statutory history establishes that, when the Worker's Compensation Act was adopted, the "exceptional causes" alternative calculation was not applicable to all employees. The composition and structure of the current statute suggest that the alternative calculation remains a limited "safety net" not available to all types of employees. First, we note that the wage calculation for daily or hourly workers is based on the employer's average work week, whereas both the calculation for output employees and the "exceptional causes" alternative calculation are based on the employee's average earnings over six months. Second, the alternative calculation is to be used when "such method" of calculation yields unfair results. If the legislature intended the alternative calculation to be available to cure unfair results with respect to both of the other methods of calculation, one would expect the last sentence to be stated in the plural, "If, because of exceptional causes, such *methods* of computation *do* not ascertain fairly the earnings of an employee...." Finally, using the last antecedent rule, the reference to "such method of computation" should be construed to mean only the last method of computation (for output employees).

■ These rules of construction all point to the same conclusion—that the "exceptional causes" alternative applies only to output employees. But the process of statutory construction requires more than just a choice of rules. Our goal is to ascertain and give effect to the intent of the legislature, which means, among other things, that our interpretation should be consistent with the purposes of the statute. The two purposes of the Worker's Compensation Act are "to provide a scheme for assured compensation for work-related injuries without regard to fault and to relieve employers and employees of the expenses and uncertainties of civil litigation." [10] Our interpretation of § 2302 promotes those purposes by eliminating uncertainty and litigation over the calculation of most employees' wages.

### III. Conclusion

Based on the foregoing, we conclude that the decision of the Superior Court must be REVERSED and the matter REMANDED for further action in accordance with this opinion.

10. *Kofron v. Amoco Chemicals Corp.*, Del.     Supr., 441 A.2d 226, 231 (1982).