**Charles LEATHERBURY, Plaintiff Below, Appellant,**

v.

**Bertram GREENSPUN, D.O., Christiana Care Health Services, Inc., and Brian H. Sarter, M.D., Defendants Below, Appellees.**

**No. 200, 2007.**

Supreme Court of Delaware.

Submitted: Oct. 24, 2007.

Decided: Nov. 30, 2007.

Reargument Denied Dec. 18, 2007.

---

Gary W. Aber, Esquire (argued), Aber, Goldlust, Baker & Over, Wilmington, Delaware, for appellant, Charles Leatherbury.

William L. Doerler, Esquire (argued) and John D. Balaguer, Esquire, White and Williams, LLP, Wilmington, Delaware, for appellee, Bertram Greenspun, D.O.

Dennis D. Ferri, Esquire and Amy A. Quinlan, Esquire (argued), Morris, James, LLP, Wilmington, Delaware, for appellee, Christiana Care Health Services, Inc.

Before HOLLAND, BERGER and JACOBS, Justices.

HOLLAND, Justice.

The plaintiff-appellant, Charles Leatherbury, appeals from final judgments entered by the Superior Court that dismissed his complaint as to all defendants on the basis that it was barred by the applicable two-year statute of limitations. The Superior Court rejected Leatherbury's contention that he had tolled the two-year statute of limitations by complying with the "Notice of Intent to investigate" provisions of Title 18, section 6856(3) of the Delaware Code. The Superior Court ruled that Leatherbury's efforts at complying with the statute had failed because he sent those Notices of Intent via Federal Express rather than by "certified mail, return receipt requested." We have concluded that the judgments of the Superior Court must be affirmed.

### Facts

This negligence action arises from medical care that was provided to Leatherbury, by the defendants-appellees, Christiana Care Health Services, Inc. ("CCHS"), Dr. Bertram Greenspun and Dr. Brian H. Sarter. Leatherbury was a patient in Christiana Hospital from April 24, 2003, through May 13, 2003. On April 24, 2003, Leatherbury underwent a coronary angiography procedure. He was subsequently diagnosed with a resulting right pseudoaneurysm. Leatherbury had cardiac bypass surgery on April 29, 2003. He was transferred to the Wilmington Hospital Rehabilitation Facility (a/k/a Christiana Rehabilitation Facility) on May 13, 2003.

Leatherbury was discharged from that facility on May 29, 2003. After his release, the pseudoaneurysm redeveloped and Leatherbury was admitted to Christiana Hospital for treatment. His treatment included a resection in the operating room. The complaint alleges the defendants were negligent in failing to instruct Leatherbury regarding post-hospitalization care and maintenance of the site of the pseudoaneurysm/coronary catheterization in the event

that the condition redeveloped, so as to avoid future complications.

On April 22, 2005, Leatherbury's attorney sent defendants Greenspun, CCHS and Sarter, by Federal Express "Notice of Intent to investigate." The letters constituting the "Notice of Intent" stated:

> Please be advised we have been retained by Mr. Leatherbury to investigate possible medical negligence with respect to complications from a cardiac catheterization and subsequent lower extremity nerve damage performed on or about April 25, 2005. The purpose of this letter is to provide you with "Notice of Intent" to investigate these claims pursuant to 18 *Del. C.* § 6856.

Leatherbury filed his complaint in this matter on August 5, 2005. The complaint alleges that "the defendants named herein were provided notices of these proceedings by correspondence dated April 22, 2005, copies of which are attached hereto as Exhibit No. 1." [1]

### Statute of Limitations

The applicable statute of limitations in this medical malpractice action is two years.[2] An injured party may toll the statute of limitations for ninety days, however, if he or she complies with section 6856(3) of the Delaware Code,[3] which relevantly provides:

> (3) A plaintiff may toll the above statutes of limitations for a period of time up to 90 days from the applicable limitations contained in this section by sending a Notice of Intent to investigate to each potential defendant(s) *by certified*

*mail, return receipt requested,* at the defendant(s') regular place of business. The notice shall state the name of the potential defendant(s), the potential plaintiff and give a brief description of the issue being investigated by plaintiff's counsel. The 90 days shall run from the last day of the applicable statute of limitations contained in this section. The notice shall not be filed with the court. If suit is filed after the applicable statute of limitations in this section, but before the 90 day period in this section expires, a copy of the notice shall be attached to the complaint to prove compliance with the statute of limitations.[4]

The Superior Court dismissed Leatherbury's complaint, as time barred, because he did not send his Notices of Intent to investigate in strict accordance with the statute.

### Issue on Appeal

■ The question that must be answered in this appeal is whether section 6856(3) permits compliance by sending a Notice of Intent to investigate via a means other than "certified mail, return receipt requested." Leatherbury contends that section 6856(3) is a remedial statute and, therefore, should be construed liberally. Accordingly, Leatherbury argues, his failure to comply with the statute by sending a Notice of Intent to investigate by Federal Express instead of by registered mail should have tolled the statute of limitations. Therefore, his complaint should not have been dismissed as untimely. The defendants-appellees argue that the statute

---

1. Included with Exhibit 1 of the complaint were three additional letters, also dated April 22, 2005. These letters indicated that they are "Corrected Versions" of the original letters. The correction is described as a change in the date of the referenced cardiac catheterization to April 25, 2003.

2. Del.Code Ann. tit. 18, § 6856.

3. Del.Code Ann. tit. 18, § 6856(3).

4. *Id.* (emphasis added).

is not subject to judicial interpretation because it is unambiguous.

▮▮▮ This Court reviews a final judgment granting a motion to dismiss *de novo*.[5] This Court also reviews statutory construction rulings *de novo* to determine whether the Superior Court erred as a matter of law in formulating or applying legal precepts.[6]

### Statutory Construction Generally

▮▮▮ It is well-settled that unambiguous statutes are not subject to judicial interpretation.[7] "If the statute as a whole is unambiguous and there is no reasonable doubt as to the meaning of the words used, the court's role is limited to an application of the literal meaning of those words."[8] Accordingly, the first step in any statutory construction requires us to examine the text of the statute to determine if it is ambiguous.[9] Under Delaware law, a statute is ambiguous if: first, it is reasonably susceptible to different conclusions or interpretations; or second, a literal interpretation of the words of the statute would lead to an absurd or unreasonable result that could not have been intended by the legislature.[10]

### Certified Mail—One Meaning

Title 18, section 6856(3) of the Delaware Code requires the use of "certified mail, return receipt requested." The General Assembly has decreed that words and phrases in statutes "shall" be read in context, and be construed "according to the common and approved usage of the English language."[11] We have determined that the term "certified mail" has a common usage with only one meaning that does not include delivery by Federal Express.

The term "certified mail," as defined by the Merriam–Webster Dictionary, means: "First class mail for which proof of delivery is secured but no indemnity value is claimed."[12] The term "mail" refers to "'letters, packages, etc., sent or delivered by the postal service.'"[13] The term "postal service," in turn, refers to the "post office," which is defined as "'an office or

---

5. *Candlewood Timber Group, LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del.2004).

6. *Christiana Hosp. v. Fattori*, 714 A.2d 754, 756 (Del.1998) (citing *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 66 (Del.1993)).

7. *Giuricich v. Emtrol Corp.*, 449 A.2d 232, 238 (Del.1982).

8. *In re Adoption of Swanson*, 623 A.2d 1095, 1096–97 (Del.1993) (citing *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, 492 A.2d 1242, 1244 (Del.1985)); accord *Pavulak v. State*, 880 A.2d 1044, 1046 (Del.2005).

9. *Newtowne Village Serv. Corp. v. Newtowne Road Dev. Co.*, 772 A.2d 172, 175 (Del.2001).

10. *Grand Ventures, Inc. v. Whaley*, 632 A.2d at 68.

11. Del.Code Ann. tit. 1, § 303.

12. *See* http://merriam-webster.com/dictionary/certifiedmail; *Elec. Data Sys. Corp. v. Twp. of Flint*, 253 Mich.App. 538, 656 N.W.2d 215, 221 (2003) (citing *Random House Webster's College Dictionary* (1997), and defining the term "certified mail" as "uninsured first-class mail requiring proof of delivery"); 39 C.F.R. Pt. 3001, Subpt. C, App. A (defining the term "certified mail service" as a service provided by the Postal Service and stating that "[c]ertified mail must be deposited in a manner specified by the postal service").

13. *W.A. Foote Mem'l Hosp. v. City of Jackson*, 262 Mich.App. 333, 686 N.W.2d 9, 13–14 (2004) quoting *Random House Webster's College Dictionary* (1997). *See Northland Pioneer Coll. v. Zarco*, 179 Ariz. 44, 875 P.2d 1349, 1352 (Ct.App.1994) (indicating that although there are many private companies available to deliver documents for a fee, "the only entity authorized to deliver mail is the United States Postal Service").

station of a governmental postal system at which mail is received and sorted, from which it is dispatched and distributed.' " [14]

■ We hold, in this case, that the applicable statutory provision is not reasonably susceptible to different conclusions or interpretations.[15] The ability to toll the two-year statute of limitations is limited and that limited method for tolling is clearly set forth in section 6856(3). A plaintiff may toll the running of the two-year statute of limitations for ninety days by sending a Notice of Intent to investigate *only* by certified mail, return receipt requested. We further hold that the term "certified mail" does not include delivery through private carriers, such as delivery by Federal Express.[16]

### Legislature Intended Result

■ If a statute is not reasonably susceptible to different conclusions or interpretations, courts must apply the words as written, unless the result of such a literal application could not have been intended by the legislature.[17] This Court has recognized that the main reason for the passage of the Delaware Medical Malpractice Act was the concern over the law extant at the time of its passage and the rising costs of malpractice liability insurance.[18] As this Court noted in *Christiana Hospital v. Fattori:*

> Prior to the enactment of the Medical Malpractice Act of 1976 ("the Act"), medical malpractice actions were governed by Chapter 81 of Title 10, pertaining to personal actions. The Delaware General Assembly adopted the Act in response to increasing costs of insurance coverage for health care providers and out of concern for the potentially open-ended period of limitations established in this Court's decision in *Layton v. Allen,* Del.Supr. 246 A.2d 794 (1968) (citations omitted). Included in the Act was Section 6856 of Title 18, which reimposes a definite two-year statute of limitations upon medical malpractice actions *with only two limited exceptions* .... [19]

The preamble of the Medical Malpractice Act of 1976 is also instructive, and provides:

> WHEREAS, the General Assembly determined it is necessary to make certain modifications to its current legal system as it relates to health care malpractice claims if the citizens of Delaware are to

**14.** *W.A. Foote Mem'l Hosp. v. City of Jackson,* 686 N.W.2d at 14 (quoting *Random House Webster's College Dictionary* (1997)).

**15.** *Rubick v. Sec. Instrument Corp.,* 766 A.2d 15, 18 (Del.2000).

**16.** Although no Delaware court has previously addressed the significance of whether service by Federal Express, satisfies the mandate of section 6856(3), several Delaware decisions have strictly construed statutes where a specific method of mailing is required. *See e.g., First Union Nat'l Bank v. Harman,* 1996 WL 769343 (Del.Super.Ct. Dec.31, 1996) (noting the distinction between registered and certified mail, the court invalidated service made by means other than as prescribed by statute); *Greenly v. Davis,* 486 A.2d 669, 671 (Del.1984) (sending notice by means other than that

which was required by statute did not constitute sufficient compliance with the long-arm statute); *Purnell v. Dodman,* 297 A.2d 391, 395 (Del.Super.Ct.1972) (stating that the Court had no authority to vary the terms of the clearly worded statute to accept non-complying means of service); *Allen v. Reddish,* 2006 WL 1688121, *2 (Del.Super.Ct. June 20, 2006) (enforcing clearly worded statutory requirement for method of mailing to effectuate service).

**17.** *Rubick v. Sec. Instrument Corp.,* 766 A.2d 15, 18 (Del.2000).

**18.** *Ewing v. Beck,* 520 A.2d 653, 658 (Del. 1987).

**19.** *Christiana Hosp. v. Fattori,* 714 A.2d at 756 (emphasis added).

continue to receive a high quality of health care while still assuring that any person who has sustained bodily injury or death as a result of a tort or breach of conduct on the part of the health care provider resulting from professional services rendered, or which should have been rendered, can obtain a prompt determination of adjudication of that claim and receive fair and reasonable compensation from financially responsible health care providers who are able to insure their liability.... [20]

In addition, the report to the Governor by the Delaware Medical Malpractice Commission, which drafted the 1976 statute, states that: "[t]he overall effect will be to eliminate the uncertainty created by the present open-ended period of limitations...." [21]

As this Court noted in *Fattori*, "the sweeping nature of the 1976 legislation conveys an intention of a complete break with the past legal treatment of medical malpractice claims." [22] As part of an effort in tort reform, the General Assembly clearly intended to ameliorate the rising cost of medical malpractice insurance by limiting law suits to those litigants who properly avail themselves of the judicial system by *strict* compliance with the Act.

Subpart (3) of section 6856 was added to the Delaware Medical Malpractice Act in July 2003. The synopsis accompanying

the amendment is also instructive and reads in pertinent part:

> Additionally a process to allow up to ninety (90) days to investigate a potential negligence claim is added and would extend the medical malpractice statute of limitations accordingly. It is expected that this grace period will give plaintiffs an opportunity to determine whether a potential claim has merit and *will result in some lawsuits that might otherwise be filed not being filed.* [23]

We conclude that the various historical recitations of the purposes for enacting the Delaware Medical Malpractice Act, including the 2003 addition of subpart (3) to section 6856, clearly reflect the General Assembly's intent to limit the number of medical malpractice actions.

### Expressio Unius Est Exclusio Alterius

Leatherbury admits that he failed to comply with the statutory requirement that he send a Notice of Intent to investigate to each potential defendant by "certified mail, return receipt requested." Leatherbury contends, nevertheless, that section 6856(3) should be broadly interpreted to include sending a "Notice of Intent to investigate" by any means that provides each potential defendant with actual notice. Leatherbury cites several cases in other jurisdictions which hold that actual notice effectuated by non-statutory means was satisfactory. [24]

---

**20.** 60 *Del. Laws* 373 (emphasis added).

**21.** *See Ewing v. Beck*, 520 A.2d at 659 (citing Report of the Delaware Medical Malpractice Commission, pp. 3–4, February 26, 1976).

**22.** *Christiana Hosp. v. Fattori*, 714 A.2d at 757.

**23.** H.B. No. 310, 142nd Gen. Assem. (Del. 2003) (Synopsis) (emphasis added).

**24.** See *Wind Dance Farm, Inc. v. Hughes Supply Inc.*, 792 N.E.2d 79, 83

(Ind.Ct.App.2003)("substantial compliance with a statutory notice requirement is sufficient when notice is timely received"); *Cinder Prod. Corp. v. Schena Constr. Co.*, 22 Mass. App.Ct. 927, 492 N.E.2d 744, 746 (1986)("Statutory prescription of registered mail or certified mail notice is to facilitate proof of delivery of notice. If actual timely notice is proved ... failure to comply with a registered or certified mail requirement is not a fatal deviation from statutory procedures."); *Norquip Rental Corp. v. Sky Steel Erectors, Inc.*, 175 Ariz. 199, 854 P.2d 1185, 1192

■ Leatherbury is not advocating for a construction of the statute. Instead, he is arguing for a judicial enlargement of the statute, such that methods of notice which were omitted by the General Assembly, presumably through inadvertence, may be included within the scope of its terms.[25] As the United States Supreme Court has noted, for a court to supply alleged statutory omissions by the legislature transcends the judicial function in a constitutional system that provides for a separation of powers.[26]

The maxim "Expressio unius est exclusio alterius" is particularly applicable in this case.[27] "As the maxim is applied to statutory interpretation, where a form of conduct, the manner of its performance and operation, and the *persons and things to which it refers are affirmatively or negatively designated, there is an inference that all omissions were intended by the legislature.*"[28] A limited review of the Delaware Code reflects that, if the General Assembly had intended to permit Notice of Intent to investigate in section 6856(3) by using alternative means of actual notice, it would have done so.[29]

In 2001, in Title 26, section 203C(e)(1), the General Assembly permitted notice to landowners to be sent "by certified mail *or its equivalent.*"[30] In 2002, in Title 18, section 1716(d), the General Assembly permitted notification of termination to insurance producers to be mailed "by certified mail, return receipt requested ... *or by overnight delivery using a nationally recognized carrier.*"[31] The language of those sections is consistent with our conclusion in this opinion that the General Assembly's use of the term "certified mail" refers to the United States Postal Service, and that when the General Assembly wants to permit notice through the use of equivalent services provided by private, nationally recognized carriers, the General Assembly has explicitly provided for that type of delivery.

■ It is well established that "a court may not engraft upon a statute language which has clearly been excluded therefrom."[32] Where, as here, when provisions are expressly included in one statute but omitted from another, we must conclude that the General Assembly intended to make those omissions.[33] There-

---

(Ct.App.1993)(Arizona has held that failure to use the prescribed delivery method is "not fatal so long as the letter actually reached the addressee"). *Clymer v. Employment Sec. Dept.,* 82 Wash.App. 25, 917 P.2d 1091 (1996)(determining that Federal Express satisfies the delivery method when the statute requires delivery by "mail").

**25.** *W. Virginia Univ. Hosp. v. Casey,* 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991).

**26.** *Id.*

**27.** *See Walt v. State,* 727 A.2d 836 (Del.1999) and *Hickman v. Workman,* 450 A.2d 388, 391 (1982).

**28.** Norman J. Singer, Sutherland Statutes and Statutory Construction, § 4915 (3d Ed.) (emphasis added).

**29.** *See Lewis v. Pawnee Bill's Wild West Co.,* 22 Del. 316, 66 A. 471, 474 (1907) (discussing a statute of limitations and stating that "[w]here the Legislature has made no exception to the positive terms of a statute, the presumption is that it intended to make none, and it is not in the province of the court to do so").

**30.** Del.Code Ann. tit. 26, § 203C (emphasis added).

**31.** Del.Code Ann. tit. 18, § 1716(d) (emphasis added).

**32.** *In Re Adoption of Swanson,* 623 A.2d at 1097 (Del.1993).

**33.** *Id.*

fore, in 2003, by requiring notice only through certified mail and by not including a reference in section 6856(3) to either equivalent service or service by a nationally recognized private carrier, the General Assembly clearly intended that notice by those means would not comport with the statute.[34]

### Literal Compliance Required

■ Section 6856(3) imposes an affirmative duty on a plaintiff seeking to avoid the impact of the two-year statute of limitations to establish compliance with section 6856(3) in the complaint. The statute directs plaintiffs to attach a copy of the Notice of Intent required by section 6856(3), that was sent by "certified mail, return receipt requested."[35] Courts have "no authority to vary the terms of a statute of clear meaning or ignore mandatory provisions...."[36]

■ Delaware courts have consistently held that strict construction is particularly important when construing statutes of limitation where "the General Assembly has evinced its intent to bar claims filed after the stated time."[37] With respect to Title 18, section 6856, this Court has previously held that the plain terms of the statute must be enforced, even if they produce a

"somewhat unfortunate result."[38] In *Ewing*, this Court considered whether it was appropriate to apply the termination of relationship or the continuous treatment doctrines to expand the two-year limitations period set forth in section 6856. After a review of the legislative of section 6856, this Court refused to expand the period, reasoning that where the legislature has made no exception to the positive terms of a statute, the presumption is that it intended to make none, and it is not the province of the court to do so.[39] As this Court further explained:

> We have no alternative but to enforce Section 6856 in accordance with its plain terms despite the somewhat unfortunate result produced. As we have previously stated:
>
> [this Court does not] sit as a super legislature to eviscerate proper legislative enactments. If the policy or wisdom of a particular law is questioned as unreasonable or unjust, then only the elected representatives of the people may amend or repeal it. Judges must take the law as they find it, and their personal predilections as to what the law should be have no place in efforts to override properly stated legislative will.

---

**34.** *1001 Jefferson Plaza P'ship, L.P. v. New Castle County Dep't of Fin.*, 695 A.2d 50 (1997); *Giuricich v. Emtrol Corp.*, 449 A.2d 232, 238 (Del.1982).

**35.** *Cf. State v. White*, 939 S.W.2d 113 (Tenn. Ct.Crim.App.1996) (stating that where the prosecuting files an indictment after the expiration of the statute of limitations the indictment must contain factual allegations establishing the tolling of the statute period).

**36.** *Brandywine Balloons, Inc. v. Custom Computer Serv., Inc.*, 1988 WL 90527, at *1 (Del.Super.Ct. Aug.2, 1988) (citing *Purnell v. Dodman*, 297 A.2d 391, 395 (Del.Super.Ct.1972)); *Watts v. Hanson*, 1994 WL 714001, at *1 (Del.Super.Ct.) (stating that

statutes of limitation are not open to judicial construction if they are unambiguous).

**37.** *Wilson v. King*, 673 A.2d 1228, 1231 (Del.Super.Ct.1996); *see also, Ewing v. Beck*, 520 A.2d 653 (Del.1987) ("Since at least 1907, this Court has refused to rewrite clear statutes of limitations to provide exceptions."); *Riggs v. Riggs*, 539 A.2d 163, 164 (Del.1988) (citing *Mary A.O. v. John J.O.*, 471 A.2d at 995, n. 4) (recognizing that statute of limitations establishes jurisdictional prerequisites for initiating or maintaining a suit).

**38.** *Ewing v. Beck*, 520 A.2d at 660.

**39.** *Id.*

Although construing a statute of limitations does not constitute the creation of an exception to the statute in violation of the prohibition against judicial legislation,[40] creating an exception under the guise of "construction" where a statute is clear and unambiguous is improper.[41]

In this case, the certified mail requirement is not reasonably susceptible to different conclusions or interpretations. A literal interpretation of the term "certified mail" does not lead to an absurd or unreasonable result. The General Assembly provided for Notice of Intent to investigate to be sent *only* by certified mail when section 6856(3) was enacted in 2003, not-withstanding its use of broader service provisions in prior statutory enactments in 2001 and 2002. We, therefore, hold that strict compliance with the unambiguous certified mail provision in section 6856(3) was required.

### *Conclusion*

The judgments of the Superior Court are affirmed.

---

**40.** *Ewing v. Beck,* 520 A.2d at 662.

**41.** *Id.* at 661 (stating that the Court will not engage in "judicial legislation" where the statute at issues clear and unambiguous).