# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

DEBORAH A. DEAL,      )
                            )
     Plaintiff,      )
                            )
     v.      )    C.A. No. N16C-03-005 JAP
                            )
LAUREN E. DIMONDO and    )
USAA CASUALTY INSURANCE )
COMPANY,      )
                            )
     Defendants.      )
                            )

## CORRECTED MEMORANDUM OPINION

The issue before the court is a narrow one: Which version of the underinsured motorist statute applies to this case? Under the former version Plaintiff is not entitled to UIM benefits; under the more recent version, she is. Plaintiff's insurance carrier, USAA, has moved to dismiss claiming that the older version of the statute applies here. The court agrees.

The facts are straightforward and not in dispute. Plaintiff Deborah Deal was involved in an automobile accident on March 27, 2014. According to the complaint, she suffered sprain and strain of the cervical and lumbar spine, bilateral disc bulges, bilateral disc

herniation with root compression, and irritation of her nerve roots in her lumbar and sacral spine. She alleges she has already undergone lengthy treatment and underwent an anterior lumbar interbody fusion on April 4, 2016. For purposes of this motion the court will assume the driver of the other car, Defendant Dimondo, is liable for Plaintiff's injuries. Ms. Dimondo has liability coverage of $100,000, and the court assumes for present purposes that the damages attributable to Plaintiff's injuries exceed that amount. Plaintiff purchased Under Insured Motorist (UIM) coverage from her carrier, USAA, in the amount of $100,000. The question here is whether she is entitled to any of those underinsured motorist benefits.

Prior to 2013 Delaware law provided that an insured was not entitled to UIM coverage unless the combined liability coverage of the tortfeasor(s) was less than the amount of the UIM coverage. According to then-existing 18 Del. C. §3902:

> An underinsured motor vehicle is one for which there may be bodily injury liability coverage in effect, but the limits of bodily injury liability coverage under all bonds and insurance policies applicable at the time of the accident *total less than the limits provided by the underinsured motorist coverage.* These limits shall be stated in the declaration sheet of the policy.

Plaintiff's UIM policy limit is $100,000 and Defendant's liability insurance limit is also $100,000. Thus, if the old statute governs, Plaintiff is not entitled to any UIM benefits because Defendant Dimondo's liability coverage is not "less than the limits provided by the underinsured motorist policy."[1]

Under the more recent version of section 3902 Plaintiff would be entitled to UIM coverage because the damages attributable to her injuries assumedly exceed the Defendant's $100,000 liability coverage. On July 3, 2013 the governor signed into law a statute which changes this result and provided for UIM coverage if the insured's damages exceeded the liability coverage available from the tortfeasors. The revision to section 3902 provides:

> An underinsured motor vehicle is one for which there may be bodily injury liability coverage in effect, *but the limits of bodily injury liability coverage under all bonds and insurance policies applicable at the time of the accident are less than the damages sustained by the*

[1] The parties agree that for purposes of the former statute, Defendant's liability coverage of $100,000 was not "less than" Plaintiff's UIM coverage of $100,000. Phrases such as "less than" and "more than" exclude "equal to." For example, in *Tatum v. State*, 941 A.2d 1009 (Del. 2007), a criminal defendant was fined $100 in a trial court, and sought to appeal to the Supreme Court, which has jurisdiction only over cases in which the fine "exceeds one hundred dollars." The Court found it lacked jurisdiction because a fine equal to one hundred dollars does not "exceed" one hundred dollars. "Tatum's sentence on the charge of being in a park after dark was a fine of $100, which clearly does not meet the jurisdictional threshold of a fine *exceeding* $100."

> *insured.* These limits shall be stated in the declaration sheet of the policy.

The parties agree, for present purposes, that Plaintiff's damages exceed Defendant's $100,000 liability coverage, and therefore Plaintiff is entitled to benefits under her UIM coverage if the new statute applies.

The key to determining which version of section 3902 applies is found in the enacting legislation. When the General Assembly revised section 3902 it provided that "[t]he provisions of this law shall apply to motor vehicle insurance policies issued and/or renewed six (6) months after enactment." In short, if Plaintiff's policy in force at the time of her accident had been renewed after January 3, 2014 ("six (6) months after enactment") she was entitled to the benefit of the revised UIM statute; on the other hand, if the latest renewal date of her policy at the time of the accident was not after January 3, 2014, she is not covered by the revision to section 3902. A short timeline shows that Plaintiff's UIM policy in force at the time of the accident had not yet been renewed after January 3, 2014:

1. July 3, 2013. Governor signs into law the revision to section 3902. The revision will apply to motor vehicle policies "issued and/or renewed six (6) months after enactment."

2. October 20, 2013. Plaintiff's USAA policy renewed. Set to expire April 20, 2014.

3. January 3, 2014. Earliest date on which renewal or issuance of new policy will cause policy to be subject to revised section 3902.

4. March 27, 2014. Automobile accident which injures Plaintiff occurs.

5. April 20, 2014. Plaintiff's USAA policy renews. This is the first renewal after the six month delay set forth in the revision to section 3902.

In short, the policy in effect when the March, 2014 accident occurred was the one renewed on October 20, 2013. Consequently it had not yet been renewed "six (6) months after enactment," and therefore the revised section 3902 does not apply here.

Plaintiff argues strenuously that the policy behind the revision to section 3902 requires that the revision be applied here. She

points to *Moffit-Ali v. State Farm*[2] in which this court held that the old version of section 3902 applied to the case before it but which described in dictum the purpose of the revision to that section:

> While the Court believes this is a legally correct decision under the law at the time of the accident, it finds comfort that the General Assembly has recognized the previous statute was being used by insurance companies to limit coverage in cases where the plaintiff was significantly injured and the liability coverage was not sufficient to provide fair compensation. Clearly this was not intended by the framers of the original statute and was inconsistent with the intent of the law. Fortunately the statute as changed will prevent such injustice from continuing. Unfortunately for Plaintiff the previous statute controls and State Farm's Motion must be granted.

The holding in this case is not a retrenchment from the views expressed in *Moffit-Ali.* But no matter how compelling the policy of a statute might be, however, "it is well-settled that unambiguous statutes are not subject to judicial interpretation."[3] The Delaware Supreme Court has often held that "the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain the sole function of the courts is to enforce it according to its terms."[4] There is simply no ambiguity in

---

[2] 2016 WL 1424788 (Del. Super.).
[3] *Leatherbury v. Greenspun,* 939 A.2d 1284, 1288 (Del. 2007).
[4] *Friends of H. Fletcher Brown Mansion v. City of Wilmington*, 34 A.3d 1055, 1059 (Del. 2011) (internal quotation and editing marks omitted); *see Arnold v. State*, 49 A.3d. 1180, 83 (Del. 2012) ("Thus, if statutory text is unambiguous, this Court's role is limited to an application of the literal meaning of the statute's words."); *Leatherbury v. Greenspun,* 939 A.2d 1284, 1288 (Del.2007) ("If the statute as a whole is unambiguous and there is

6

the language "[t]he provisions of this law shall apply to motor vehicle insurance policies issued and/or renewed six (6) months after enactment." Accordingly, the court is not free to resort to "legislative intent" to attribute another meaning to it.

Assuming for the sake of argument, however, there is an ambiguity in the statute which permits this court to divine the legislature's intent as an aid to statutory construction, the legislative history requires the same result the court has reached here. The "primary source of legislative intent is the bill's synopsis."[5] The synopsis to the revision of section 3902 leads to the same conclusion the court has reached. That synopsis makes it clear the revision is intended to apply only to policies renewed six months after the enactment of the statute:

> The provisions of the law will not affect existing insurance policies, and will apply only to renewing or new policies that become effective six months after the law is enacted.[6]

Despite the impassioned appeal from Plaintiff, the court is bound by the words used by the General Assembly. It is undisputed that Plaintiff's policy in effect at the time of the accident

---

no reasonable doubt as to the meaning of the words used, the court's role is limited to an application of the literal meaning of those words.").

[5] *Wilmington Savings Fund Soc., FSB v. Kaczmarczyk*, 2007 WL 704937 at *4, n.39 (Del. Ch.).

[6] 79 Del. Laws ch. 91, § 2 (2013).

was not one which was renewed "six months after the law is enacted." USAA's motion to dismiss is therefore **GRANTED.**

Dated: July 1, 2016

         John A. Parkins, Jr.
         Superior Court Judge

oc: Prothonotary

pc: Richard A. DiLiberto, Esquire, Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware
Thomas P. Leff, Esquire, Casarino Christman Shalk Ransom & Doss, P.A., Wilmington, Delaware
Lauren E. Dimondo, 2437 West Colonial Drive, Upper Chichester, Pennsylvania