**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| BRYAN BERRY, | ) | |
| | ) | C.A. No. N19C-01-276 RRC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CONNECTIONS COMMUNITY | ) | |
| SUPPORT PROGRAMS, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: October 15, 2019
Decided: December 5, 2019

On Defendant Connections Community Support Programs, Inc.'s
Motion to Dismiss. **GRANTED.**

# <u>MEMORANDUM OPINION</u>

Stephen A. Hampton, Esquire, and Anthony V. Panicola, Esquire, Grady and Hampton, LLC, Wilmington, Delaware, Attorneys for Plaintiff Bryan Berry.

Dana Spring Monzo, Esquire, and Kelly E. Rowe, Esquire, White and Williams LLP, Wilmington, Delaware, Attorneys for Defendant Connections Community Support Programs, Inc.

COOCH, R.J.

# I. INTRODUCTION

This is a medical malpractice action brought by Bryan Berry ("Plaintiff") against Connections Community Support Programs, Inc. ("Defendant") alleging a deviation from the applicable standards of care owed to Plaintiff during the October 17, 2016 to January 6, 2017 timeframe when he was in the custody of the Delaware Department of Correction ("DOC") and was provided medical care by Defendant. Plaintiff asserts that "[Defendant] is legally responsible for all actions of its employees and agents that breach applicable standards, causing [patients] harm, in the course of providing them health care"[1] and that "[t]he medical providers working for [Defendant] grossly deviated from the applicable standards"[2] in various ways when providing care to Plaintiff.[3] As a result of Defendant's deviation from the applicable standard of medical care, Plaintiff asserts that he suffered significant injury.[4]

Defendant, moving to dismiss the complaint, argues that Plaintiff has failed to toll the statute of limitations via 18 *Del. C.* § 6856(4) by attempting to serve a "Notice of Intent to investigate" (hereinafter "Notice of Intent") on Defendant "several weeks past the applicable statute of limitations deadline"[5] on January 21, 2019.[6] Plaintiff responds by arguing that, by Defendant having actual notice of Plaintiff's claim in this matter when Defendant received Plaintiff's February 13, 2018 letter addressed to Defendant's Chief Executive Officer that put Defendant on notice of a possible future lawsuit, Plaintiff effectively satisfied the notice requirement in 18 *Del. C.* § 6856(4).[7]

The issue is whether Plaintiff's earlier September 28, 2019 "Notice of Intent," which identified only one Defendant and generally described to the Defendant that Plaintiff had a possible cause of action against Defendant, complied with 18 *Del. C.* § 6856(4). Defendant has moved to dismiss Plaintiff's complaint as time-barred,

---

[1] Pl.'s Compl. at ¶ 6.

[2] *Id.* at ¶ 44.

[3] *Id.* at ¶ 44(a)-(d).

[4] *Id.* at ¶ 45(a)-(e).

[5] Def.'s Mot. to Dismiss at ¶ 3.

[6] Reference to this January 21, 2019 date of a "Notice of Intent" appears in the complaint, but subsequently Plaintiff produced a September 28, 2018 "Notice of Intent" letter as the operative Notice of Intent.

[7] Pl.'s Resp. to Def.'s Mot. to Dismiss at ¶¶ 5, 6.

2

pursuant to Superior Court Rule 12(b)(6). The validity of the Notice of Intent, under 18 *Del. C.* § 6856(4), is a threshold requirement that demands strict compliance.[8]

This Court concludes that Plaintiff failed, in terms of "strict compliance" with 18 *Del. C.* § 6856(4), to toll the statute of limitations with a valid Notice of Intent in this matter. The Court thus **GRANTS** Defendant's motion to dismiss pursuant to Superior Court Civil Rule 12(b)(6).

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff, at the time the alleged conduct occurred, was in the custody of the Delaware Department of Correction ("DOC"). He was held at Plummer Community Correctional Center and then at Howard R. Young Correctional Institution. The DOC had contracted with Defendant to provide medical care at its facilities. Defendant provided for medical staff to administer medical care at these facilities.

On or about October 6, 2016, while Plaintiff was incarcerated, Plaintiff "was working on road crew and was trying to drag a large tree by pulling on one of its branches. The branch he was holding broke, which caused him to fall to the ground very hard."[9] The Plaintiff developed symptoms from this fall and sought medical attention on October 17, 2016.[10] Between the first time Plaintiff sought medical attention on October 17, 2016 and when Plaintiff was released from DOC custody on January 6, 2017, medical practitioners employed by Defendant examined Plaintiff but did not find a clear and consistent injury to Plaintiff.[11]

On January 27, 2017, after being released from DOC custody, Plaintiff sought medical assistance and received a "MRI C-spine" scan which allegedly showed "[m]oderate degenerative discogenic disease at C5-C7 levels, including large central

---

[8] *Farmer v. Brosch*, 8 A.3d 1139, 1143 (Del. 2010) (holding that "to toll the statute for the extended 90 day period, a plaintiff need to strictly comply [with 18 *Del. C.* § 6856(4)]. That is, he must send a [valid] Notice of Intent to investigate to each potential defendant(s) by certified mail, return receipt requested, at the defendant(s') regular place of business. Having done this, a plaintiff will have effectively extended the limitations period by 90 days."); *see Leatherbury v. Greenspun*, 939 A.2d 1284, 1293 (Del. 2010) (finding certified mail requirement in "Notice of Intent" statute "is not reasonably susceptible to different conclusions or interpretations" and holding "strict compliance" with that provision is required to toll statute of limitations.); *see also Verrastro v. Bayhealth Medical Center, Inc.*, 119 A.3d 676 (Del. Super. 2015) (finding a Notice of Intent satisfied the threshold requirements of 18 *Del. C.* § 6856(4), and setting forth suggested contents of a valid Notice of Intent.).

[9] Pl.'s Compl. at ¶ 11.

[10] *Id.* at ¶ 12.

[11] *Id.* at ¶¶ 12-32.

3

extruded disc with ligamenta flava infolding at C6-C7 causing severe spinal canal stenosis and cord compression, without intra-medullary signal. Moderate spinal canal, neural foraminal stenosis at C-5-C6 and encroachment of bilateral exiting C6 nerve roots."[12]

On February 13, 2018, Plaintiff's counsel sent a "letter with enclosures" to the President and Chief Executive Officer of Defendant.[13] This "letter with enclosures" was apparently not sent by certified mail, contrary to the statutory requirement for a valid Notice of Intent and appears essentially intended to advise Defendant of a possible future lawsuit.

On February 28, 2018, Defendant's counsel sent a letter to Plaintiff's counsel that confirmed receipt of the February 13, 2018 letter and requested Plaintiff's complete medical records. On September 28, 2018, Plaintiff sent a "Notice of Intent" to Defendant.

On January 24, 2019, Plaintiff filed a complaint and asserted a claim of medical malpractice against Defendant. In response, on May 17, 2019, Defendant filed a Motion to Dismiss and argued that Plaintiff's claim is time-barred due to Plaintiff's failure to comply with 18 *Del. C.* § 6856 and must thus be dismissed pursuant to Delaware Superior Court Civil Rule 12(b)(6).

On June 7, 2019, Plaintiff filed a Response to Defendant's Motion to Dismiss and argued that Defendant received actual notice of this claim through a letter sent by Plaintiff's counsel to the President and Chief Executive Officer of Connections on February 13, 2018 and that a certified notice of intent letter was delivered on September 28, 2018. Plaintiff argues, for purposes of 18 *Del. C.* § 6856(4), that Defendant had sufficient actual notice for purposes of the statutory notice requirement under 18 *Del. C.* § 6856.[14]

On June 18, 2019, Defendant filed a Reply Brief and maintained its position that the statute of limitations was not adequately tolled in this matter due to Plaintiff's non-compliance with the statutory notice requirement and thus this claim is time-barred.

---

[12] *Id.* at ¶ 37.
[13] Pl.'s Resp. to Def.'s Mot. to Dismiss at ¶ 1.
[14] *Id.* at ¶¶ 5, 6.

## III. THE PARTIES' CONTENTIONS

### A. Defendant's Contentions

Defendant's overarching contention is that Plaintiff did not toll the 18 *Del. C.* § 6856 because of his noncompliance with the statutory notice requirement of 18 *Del. C.* § 6856(4). Additionally, and in support of Defendant's contention that Plaintiff did not comply with 18 *Del. C.* § 6856(4), Defendant asserts the Plaintiff's September 28, 2018 Notice of Intent "fail[ed] to provide even the basic information" required by 18 *Del. C.* § 6856(4) and *Verrastro.* To counter Plaintiff's assertion that actual notice is sufficient for purposes of the statutory notice requirement in 18 *Del. C.* § 6856(4), Defendant asserts that, "[a]s set forth in *Leatherbury*, whether a defendant has actual knowledge of a claim is of no import in the face of statutory noncompliance"[15] and that "[t]he validity of the Notice of Intent to Investigate is a threshold requirement that demands strict compliance."[16] Thus, Defendant argues, "[w]ithout a valid Notice of Intent to Investigate, the statute of limitations [in this matter] expired, at the latest, on January 6, 2019. As a result, Plaintiff's Complaint is time-barred and must be dismissed accordingly."[17]

### B. Plaintiff's Contentions

Plaintiff argues that, since Defendant had actual notice by Plaintiff's February 13, 2018 and September 28, 2018 letters regarding Plaintiff's claim against Defendant, the essence of 18 *Del. C.* § 6856(4) was properly complied with and thus Plaintiff tolled the statute of limitations in this matter. Plaintiff supports this contention by stating that "*[t]he* purpose of the notice requirement in 18 Del. C. § 6856([4]) is to give notice of claim to a defendant prior to the filing of suit so that defendant can try to resolve the claim without litigation should it determine that the claim was meritorious." (emphasis added).[18] Defendant ultimately argues that "Defendant's arguments are form over substance[.]"[19]

## IV. STANDARD OF REVIEW

Upon a motion to dismiss under Superior Court Rule 12(b)(6), the Court "(i) accepts all well-pleaded factual allegations as true, (ii) accepts even vague

---

[15] Def.'s Reply Br. In Support of its Mot. to Dismiss at ¶ 14.

[16] *Id.* at ¶ 2.

[17] *Id.* at ¶ 19-21.

[18] Pl.'s Resp. to Def.'s Mot. to Dismiss at ¶ 5.

[19] *Id.* at ¶ 6.

5

allegations as well-pleaded if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances."[20] However, the Court will "ignore conclusory allegations that lack specific supporting factual allegations."[21]

A party raising a statute of limitations defense may do so in a motion to dismiss when the pleading itself shows that the action was not brought within the statutory period.[22] The Court accepts the allegations contained in the opposing party's pleading as true for purposes of such a motion.[23]

The validity of the Notice of Intent, under 18 *Del. C.* § 6856(4), is a threshold requirement that demands strict compliance.[24]

## V. DISCUSSION

*A. 18 Del. C. § 6856(4) requires strict compliance.*

Under 18 *Del. C.* § 6856, parties seeking recovery of damages against a health care provider for injuries arising out of medical negligence must initiate an action for relief within two years of the date upon which such injury occurred. Under this two-year statute of limitation for medical negligence, Plaintiff was required to file his complaint before January 6, 2019. The statute permits the limitations period to be tolled an additional 90 days, however, in certain circumstances:

> A plaintiff may toll the above statutes of limitations for a period of time up to 90 days from the applicable limitations contained in this section by sending a Notice of Intent to investigate to each potential defendant or defendants by certified mail, return receipt requested, at the defendant's or defendants' regular place of business. The notice shall state the name of the potential defendant or defendants, the potential plaintiff and give a brief description of the issue being investigated

---

[20] *Turf Nation, Inc. v. UBU Sports, Inc.*, 2017 WL 4535970, at *5 (Del. Super. Ct. Oct. 11, 2017) (citing *Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011)).

[21] *Id.* (quoting *Ramunno v. Crawley*, 705 A.2d 1029, 1034 (Del. 1998)).

[22] *Wilson v. Kirlin*, 2011 WL 1465576, at *1 (Del. Super. Ct. Apr. 15, 2011); *Brooks v. Savitch*, 576 A.2d 1329, 1330 (Del. Super. Ct. 1989).

[23] *Wilson*, 2011 WL 1465576, at *1.

[24] *Farmer v. Brosch*, 8 A.3d 1139, 1143 (Del. 2010); *see also Leatherbury v. Greenspun*, 939 A.2d 1284, 1293 (Del. 2010).

by plaintiff's counsel. The 90 days shall run from the last day of the applicable statute of limitations contained in this section. The notice shall not be filed with the court. If suit is filed after the applicable statute of limitations in this section, but before the 90-day period in this section expires, a copy of the notice shall be attached to the complaint to prove compliance with the statute of limitations.

Following such, under 18 *Del. C.* § 6856(4), a plaintiff can toll the limitations period so long as the requirements for tolling are satisfied. This Court, in *Verrastro v. Bayhealth Medical Center, Inc.*, set forth several requirements before a party can toll the limitations period mentioned above and suggested in a footnote what a valid Notice of Intent could resemble.[25] First, Notices of Intent shall be sent by certified mail, return receipt requested.[26] Next, the Notice of Intent must "contain three elements: (1) the name of the potential defendant or defendants; (2) the potential plaintiff; and (3) a brief description of the issue plaintiff's counsel is investigating."[27] Since Plaintiff and Defendant primarily focus

---

[25] Footnote 30 from *Verrastro v. Bayhealth Medical Center, Inc.* provides:

> To ensure that a Notice of Intent more clearly complies with § 6856(4), wording somewhat along the following lines might be appropriate (using this case as an example):
>
> To: [Potential Defendant Doctor or Practice]
>
> This Notice of Intent to investigate is sent pursuant to 18 *Del. C.* § 6856(4) on behalf of the Estate of Bridget E. Verrastro and Christopher Giery, as De Facto Guardian and Next Best Friend of Bridget E. Verrastro's minor daughter, Nicole Bae Verrastro.
>
> We have been retained to investigate a claim or claims involving healthcare medical negligence and wrongful death arising from Bridget E. Verrastro's treatment on or about August 12–14, 2012 as a patient at Bayhealth Medical Center, Inc.—Milford Memorial and Kent General Hospitals. Bridget E. Verrastro's Estate and Christopher Giery are the potential plaintiffs. [Potential Defendant Doctor or Practice] is a potential defendant. We are investigating the facts leading to Ms. Verrastro's death, and whether [Potential Defendant Doctor or Practice] failed to provide proper healthcare for Ms. Verrastro and/or breached the applicable standard of care.
>
> This notice is sent via Certified U.S. Mail, Return Receipt Requested.

[26] *See* Del. Code Ann. tit. 18, § 6856(4) (2014) ("A plaintiff may toll the above statutes of limitations for a period of time up to 90 days from the applicable limitations contained in this section by sending a Notice of Intent to investigate to each potential defendant or defendants by certified mail, return receipt requested, at the defendant's or defendants' regular place of business."); *see Leatherbury v. Greenspun*, 939 A.2d 1284, 1292 (Del. 2007)

[27] *Verrastro*, 119 A.3d 676, 680 (Del. Super. 2015).

their contentions around the content of the Notice of Intent, this Court must examine the content of the Notice of Intent in this matter.

> B. *Plaintiff's February 13, 2018 "Letter with Enclosures" is not a "Notice of Intent" Letter. Plaintiff's September 28, 2018 "Notice of Intent" Letter was deficient.*[28]

Plaintiff argues that the September 28, 2018 Letter was the "Notice of Intent" in this matter.[29] However, Plaintiff argues that the combination of the earlier February 13, 2018 "letter with enclosures" sent by Plaintiff to Defendant with the September 28, 2018 "Notice of Intent" provides all the information Defendant's counsel required to be put on notice in accordance with 18 Del. C. 6856(4).[30] The Court must examine both the February 13, 2018 "letter with enclosures" and September 28, 2018 "Notice of Intent."

The February 13, 2018 "letter with enclosures," apparently not sent by certified mail, provides:

February 13, 2018

Connections Community Support Programs, Inc.
C/O Catherine Devancey McKay
3821 Lancaster Pike
Wilmington, DE 19805

RE: [Bryan Berry], DOB 06/03/1964, SBI # 00221236

Dear Mrs. McKay,

I have been retained to represent Bryan Berry who was a former inmate at both Plummer Center and Howard Young Correctional Institution in October 2017. In early October Mr. [Berry] was on a work release job site when he fell and injured his cervical spine. From October until he was released from prison on January 6, 2017, Mr. [Berry] continually complained to the medical staff about neurological injuries and that they were worsening over time. The medical staff

---

[28] On July 1, 2019, at oral argument, Plaintiff's counsel conceded that "perhaps maybe we should have done more to point [the type of case this is] out to defendants in the [September 28, 2018] notice [...][,]" "we potentially could have added more to [the Notice of Intent][,]" and "[m]aybe technically it should be in there." Tr. at pp. 9 (lines 17-19), 10 (line 1), and 15 (line 23). However, Plaintiff's counsel also stated "[s]o I believe that we've made proper notice, I believe that the defendant had notice of everything. You couldn't get better notice, I don't think, than what they got [...]." Tr. at pp. 10 (lines 21-23), 11 (line 1).
[29] Pl.'s Resp. to Def.'s Mot. to Dismiss at ¶ 3.
[30] *Id.* at ¶ 1.

8

assumed he was not hurt, especially physical therapist Sarah Clark who wrote progress notes that were very dismissive of his complaints. Ms. Clark, the RN's and NP's employed by Connections' apparently can tell whether or not a patient has a spinal cord injury simply by watching them walk in the hall. No need to order expensive tests and/or send the patient to the ER or neurologist, all these experts had to do was look at Mr. [Berry] to decide he wasn't hurt. On several occasions[,] the medical staff claimed Mr. [Berry] was referred to a neurologist, however he was never seen by a neurologist during the four months leading up to his release.

After his release Mr. [Berry], continued to have extensive neurological problems related to the injuries he sustained when he fell on the work release job. The pain became so bad that on January 26th, he walked from his temporary residence on Airport Road to the Christiana Medical Center where he was seen in the emergency room. After Mr. [Berry] was examined and after numerous CT scans and an MRI order were completed, the MRI disclosed that Mr. [Berry] had significant spinal injuries, including: a "large central extruded disk with ligament flava infolding at C6-C7 causing severe spinal canal stenosis and cord compression, without intra-medullary signal…".

When cervical spinal cord compression is not diagnosed it continues to cause multiple neurological symptoms in various parts of the body, and when not treated promptly results in permanent neurological damage. Mr. [Berry] now has significant permanent neurological damage affecting his entire body that would have been avoided if the Connections' staff had treated Mr. [Berry] with the common courtesy and respect to which all patients are entitled. Even those in prison. The way Mr. [Berry] was treated was extremely unprofessional and came nowhere close to meeting the appropriate standards of care.

I suggest that you have someone with authority to consider any claims for damages made by Mr. [Berry] due to the malpractice of the Connections' staff. Mr. [Berry] is entitled to compensation for the inexcusable and disrespectful care by the Connections' employees. If someone does not contact me concerning Mr. [Berry's] treatment, the only other option will be a suit for medical malpractice, and probably civil rights violations as well. Enclosed you will find a chronology of Mr. [Berry's] medical ordeal along with medical records on which the chronology is based. I await your response.

Very truly yours,

[Plaintiff's Counsel].

While some information required for a valid Notice of Intent might be found in Plaintiff's "letter with enclosures," Plaintiff never manifested his intention that this "letter with enclosures" served as a Notice of Intent pursuant to 18 *Del. C.* § 6856(4). As a result, this "letter with enclosures" cannot be considered to operate as a Notice of Intent either on its face or in conjunction with the September 28, 2018 "Notice of Intent." Notably, the September 28, 2018 "Notice of Intent" letter did not reference the February 13, 2018 "letter with enclosures."

9

The Notice of Intent Plaintiff sent to Defendant on September 28, 2018 by certified mail states:

> Dear [Defendant's Counsel]:
>
> On behalf of [Bryan] Berry, I am sending you a Notice of Intent to Investigate the medical care provided to Mr. Berry. I am sending this notice pursuant to 18 *Del. C.* § 6856. There is reason to believe that the treatment provided to Mr. Berry from early October 2017, until his release from prison on January 6, 2017, by agents and employees of Connections Community Support Programs, Inc., fell below the applicable standards of care.
>
> Sincerely yours,
>
> [Plaintiff's Counsel].

There are two issues with this Notice of Intent. The first issue is that only one defendant is actually named. There is ambiguity as to the identity of Defendant's "agents and employees" as referred to above. Plaintiff generally describes other defendants through use of the language "agents and employees of Connections [...]" but this is not sufficient to cover the first prong of the content requirement, as set out in *Verrastro*, regarding Notices of Intent to Investigate in the medical negligence context. The second and more significant issue is that Plaintiff fails to provide even a brief description of the issue that Plaintiff is investigating. Simply stating that treatment by Defendant's agents and employees fell below applicable standards of care is too brief and generalized for a party to be truly on notice of the issues in a potential case. This is not "drafting imprecision" that was allowed in *Verrastro*.

### C. Plaintiff mistakenly argues that "the" purpose of 18 Del. C. § 6856(4) is to allow cases to be potentially settled.

Plaintiff, in its Response to Defendant's Motion to Dismiss, mistakenly interprets the purpose of 18 *Del. C.* § 6856(4). According to Plaintiff, "[t]*he* purpose of the notice requirement in 18 Del C. § 6856(c) is to give notice of claim to a defendant prior to the filing of suit so that defendant can try to resolve the claim without litigation should it determine that the claim was meritorious."[31] This is not accurate. The Delaware General Assembly did note in the synopsis to House Bill 310 that the ninety day "grace period" exists to "give plaintiffs an opportunity

---

[31] *Id.* at ¶ 5 (emphasis added).

to determine whether a potential claim has merit and will result in some lawsuits that might otherwise be filed not being filed."[32] Rather than permitting defendants extra time in which to resolve claims without litigation which, as Defendant responds, "may be a desirable effect of 18 *Del. C.* § 6856(4)," it is not the purpose of the ninety day extension.[33] The Delaware General Assembly intended this rule to permit plaintiffs additional time to determine whether a meritorious claim in fact exists.

## VI. CONCLUSION

As a result of the deficiencies in his September 28, 2018 Notice of Intent, Plaintiff has not fulfilled the requirements of 18 *Del. C.* § 6856(4) and, as a result, did not toll the statute of limitations. Without tolling the statute of limitations in this matter, Plaintiff's complaint cannot survive Defendant's motion to dismiss.

Defendant's motion to dismiss is **GRANTED.**

_____
Richard R. Cooch, R.J.

cc: Prothonotary

---

[32] H.B. No. 310, 142nd Gen. Assem. (Del. 2003) (Synopsis); *see also Leatherbury*, 939 A.2d 1284, 1290.
[33] Def.'s Reply Br. at ¶ 16.